**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| Marsh USA, Inc., ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | **Case No. 1:19-cv-03266-STV** |
| ) | |
| Cobbs Allen Capital, LLC, ) | |
| ) | |
| *Defendant.* ) | |
| ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 12(B)(6)**

# TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................... 1

COMPLAINT ALLEGATIONS AND FACTUAL BACKGROUND ................................... 2

I.      THE MARSH/JLT MERGER AND SUBSEQUENT EMPLOYEE EXODUS.......... 2

II.     THE FACTS (OR LACK THEREOF) UNDERLYING PLAINTIFF'S THEORIES................................................................................................. 4

    A.     Marsh's "Trade Secret" and "Confidentiality Agreement" Assertions .......... 4

    B.     Marsh's "Fiduciary Duty" Assertions ........................................................ 5

    C.     Marsh's "Lost Client" Theory .................................................................... 6

LEGAL STANDARD ............................................................................................... 7

ARGUMENT .......................................................................................................... 8

I.      MARSH DOES NOT STATE A TRADE SECRET MISAPPROPRIATION CLAIM........................................................................................................ 8

    A.     Permitting Marsh's Claim Would Stretch Trade Secret Law beyond Recognition ............................................................................................. 8

    B.     Marsh Fails to Identify Any Trade Secrets That Were or Threaten to be Misappropriated by CAC.................................................................... 11

II.     MARSH'S TORTIOUS INTERFERENCE WITH CONTRACT CLAIM FAILS AS A MATTER OF LAW. .................................................................. 15

III.    MARSH HAS NOT STATED A VALID CLAIM FOR AIDING AND ABETTING A BREACH OF FIDUCIARY DUTIES. ..................................... 17

CONCLUSION ..................................................................................................... 19

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Alattar v. Bell,*
    2014 WL 4851655 (D. Colo. Sept. 29, 2014) .......................................................16

*Alvarez LLC v. Blazar Tech. Solutions, LLC,*
    2019 WL 3205952 (D. Colo. July 16, 2019) .........................................................17

*Artic Energy Servs., LLC v. Neal,*
    2018 WL 1010939 (D. Colo. Feb. 22, 2018) .........................................................11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................7

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................7

*Cargill Inc. v. Kuan,*
    2014 WL 5336233 (D. Colo. Oct. 20, 2014) ........................................................10

*Ciena Commc'ns, Inc. v. Nachazel,*
    2010 WL 3489915 (D. Colo. August 31, 2010) ..........................................9, 11, 13

*Cocona, Inc. v. Singtex Indus. Co., Ltd.,*
    2014 WL 5072730 (D. Colo. Oct. 9, 2014) ..........................................................11

*Cunningham Lindsey U.S. Inc. v. Crawford & Co.,*
    2018 WL 6307865 (D. Colo. Dec. 3, 2018) ......................................14, 15, 16, 18

*Del Monte Fresh Produce Co. v. Dole Food Co., Inc.,*
    148 F. Supp. 2d 1326 (S.D. Fla. 2001) .................................................................10

*Edifecs Inc. v. TIBCO Software, Inc.,*
    756 F. Supp. 2d 1313 (W.D. Wash. 2010) ...........................................................13

*Gates Rubber Co. v. Bando Chem. Indus., Ltd.,*
    9 F.3d 823 (10th Cir. 1993) ..................................................................................11

*Hodgson v. Farmington City,*
    675 F. App'x 838 (10th Cir. 2017) .........................................................................2

*Holmes v. Young,*
    885 P.2d 305 (Colo. App. 1994) ...........................................................................16

*IKON Office Solutions, Inc. v. American Office Prods., Inc.*,
    178 F. Supp. 2d 1154 (D. Or. 2001) ...................................................11

*Janus et Cie v. Kahnke*,
    2013 WL 5405543 (S.D.N.Y. August 29, 2013) ...................................10

*Jet Courier Serv., Inc. v. Mulei*,
    771 P.2d 486 (Colo. 1989)..............................................................16

*JLT Specialty Ins. Inc. v. NFP Prop. & Casualty. Servs., Inc.*,
    No. 19-cv-3921 (S.D.N.Y. May 1, 2019) .........................................6, 8

*Khalik v. United Air Lines*,
    671 F.3d 1188 (10th Cir. 2012) ......................................7, 11, 14, 15

*Mandelbaum v. Fiserv, Inc.*,
    787 F. Supp. 2d 1226 (D. Colo. 2011) ............................................16

*McGriff Seibels & Williams, Inc. v. Sparks*,
    No. 2:19-cv-1196-ACA, 2019 WL 4600051 (N.D. Ala. Sept. 23, 2019)...................... *passim*

*Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*,
    311 F. Supp. 2d 1048 (D. Colo. 2004) ............................................15

*Ouedrago v. Downtown Denver Bus. Improvement Dist.*,
    2014 WL 559962 (D. Colo. Feb. 13, 2014)........................................15

*Phillips v. Carpet Direct Corp.*,
    2017 WL 121630 (D. Colo. Jan. 10, 2017)........................................14

*Precision Fitness Equipment v. Nautilus, Inc.*,
    2009 WL 2169361 (D. Colo. July 20, 2009) .....................................17

*RE/MAX, LLC v. Quicken Loans, Inc.*,
    295 F. Supp. 3d 1163 (D. Colo. 2018)....................................11, 12, 13

*Silva v. US Bank, Nat'l Ass'n*,
    294 F. Supp. 3d 1117 (D. Colo. 2018)...............................................7

*Stender v. Gerardi*,
    2008 WL 4452117 (D. Colo. Sept. 30, 2008) .....................................8

*Tal v. Hogan*,
    453 F.3d 1244 (10th Cir. 2006) ........................................................2

*Tennille v. Western Union Co.*,
    751 F. Supp. 2d 1168 (D. Colo. 2010)................................................8

*U.S. v. Ahidley*,
  486 F.3d 1184 (10th Cir. 2007) ............................................................2

*Xantrex Tech. Inc. v. Adv. Energy Indus., Inc.*,
  2008 WL 2185882 (D. Colo. May 23, 2008) ........................................10

**Statutes**

18 U.S.C § 1836(b)(3)(A)(i)(I) ...............................................................9

Permitting Marsh's Claim Would Stretch Trade Secret Law .......................8

**Rules**

Rule 12(b)(6)...................................................................................2, 7, 18

# INTRODUCTION

This case is just one part of Plaintiff Marsh USA, Inc. ("Marsh")'s multi-front intimidation campaign against former employees of JLT Specialty Insurance Services, Inc. ("JLT Specialty" or "JLT"), which began when Marsh and JLT merged in April 2019. Rather than focusing on making its merger with JLT a success, Marsh has resorted to scorched-earth tactics to stifle fair competition from former employees who it demoted, constructively discharged, and pushed out of Marsh/JLT. Plaintiff's improper purpose is clear from the complaint's astonishing silence on any wrongdoing by any specific people: the complaint is paper thin and contains nearly no facts. What is alleged describes nothing more than ordinary competition between Marsh and CAC Specialty without pleading breach of any agreement or duty at all.

Marsh's generic allegations do little more than recycle the basic elements of its claims. Marsh claims that *someone* stole unidentified trade secrets, but *does not even identify the person who allegedly stole something*, let alone what was purportedly stolen, why it is a trade secret, or how it was used or disclosed. And while Marsh alleges that it lost business, it does not (and cannot) assert that the business was solicited by someone who was barred from soliciting it, nor does it provide any contract (or specific contractual obligation) that was breached. Rather than alleging facts, Marsh relies entirely on vague insinuation and empty recitation of the elements of its claims. While the Federal Rules only require notice pleading, this complaint does nothing to tell CAC what it supposedly did that amounts to a legal wrong. And the only facts actually pled, which relate to Count IV of the Complaint, are defied by the materials cited in support of the claims (which Marsh references, but does not attach to its Complaint). The Court should force

Marsh to compete with CAC in the marketplace instead of the courthouse and dismiss Marsh's complaint.

## COMPLAINT ALLEGATIONS AND FACTUAL BACKGROUND

### I.   THE MARSH/JLT MERGER AND SUBSEQUENT EMPLOYEE EXODUS

In April 2019, Marsh acquired JLT Specialty's parent, Jardine Lloyd Thompson Group plc, and then merged JLT Specialty with Marsh. (*See* Compl. ¶ 11). Though Marsh pleads legal conclusions (not facts) about what happened next, a federal court in the Northern District of Alabama (whose proceedings are the basis for much of the narrative in Marsh's complaint, Compl. ¶¶ 1, 5, 31-34) has made factual findings that belie Marsh's vague insinuations. *See McGriff Seibels & Williams, Inc. v. Sparks*, No. 2:19-cv-1196-ACA, 2019 WL 4600051 (N.D. Ala. Sept. 23, 2019). After the merger, despite Marsh's public rhetoric about synergies and admiration for JLT's specialized brokering skills and ability to win business against larger competitors, Marsh alienated the U.S. team with their bureaucratic processes, lack of client focus, and unwillingness to maintain the senior roles and career opportunities for the employees acquired in the merger. As a result, many employees were pushed to look for opportunities outside Marsh to maintain their standing and careers in the insurance industry. *Id.* at *2.[1]

---

[1]   "Facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). "This includes another court's publicly filed records 'concerning matters that bear directly upon the disposition of the case at hand.'" *Hodgson v. Farmington City*, 675 F. App'x 838, 841 (10th Cir. 2017) (quoting *U.S. v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007)). Given that Marsh's narrative (and the only basis pled for Count IV of its complaint) comes directly from its (decidedly wrong) interpretation of the Alabama court proceedings, *see* Compl. ¶¶ 1, 31-34, this Court can consider the actual proceedings when addressing the sufficiency of Marsh's complaint.

One of these employees was JLT's former CEO, Michael Rice. (Compl. ¶ 7). After the merger, but before he left JLT, Mr. Rice was told there was not an equivalent position for him at Marsh and Marsh proposed a separation agreement to govern his departure. (*Id*.) The separation agreement did not contain any non-compete covenant, but instead included a limited restriction on soliciting certain clients on whose accounts Rice worked. (Compl. ¶¶ 14-15).

Ultimately many firms lined up to hire unhappy JLT employees. Some decided to leave Marsh to join other insurance brokers. Other former JLT employees were terminated by Marsh. Cobbs Allen was one of the firms looking to hire JLT's talent, including Mr. Rice. *McGriff*, 2019 WL 4600051, at *2-3. Despite Marsh's bald assertion that Mr. Rice and others agreed to join CAC Specialty in early April, the Alabama federal court (in the case Marsh cites in support for its theory) found that no one agreed to join CAC Specialty until July. *McGriff*, 2019 WL 4600051, at *3 (cited in Compl. ¶ 44-45). And CAC's first employee was not a former JLT employee, but rather Paul Sparks, a former executive from McGriff, Seibels, & Williams. (*Id*.) Mr. Rice joined Mr. Sparks at CAC Specialty in September 2019, a month after it began operations. (Compl. ¶ 53.) Eventually, roughly thirty others—unnamed in the complaint—left Marsh to join CAC Specialty to continue their careers in the specialty insurance industry. (*Id*. ¶ 35.)

Since its creation, CAC Specialty has competed with the behemoth Marsh (among others). Many JLT clients, although none are identified by name in the complaint, have left Marsh, and some have moved to CAC Specialty. (*See* Compl. ¶ 39.) Marsh does not allege (nor

could it) that any client that it lost was solicited by anyone who was barred from soliciting that business.[2]

## II. THE FACTS (OR LACK THEREOF) UNDERLYING PLAINTIFF'S THEORIES

Marsh's Complaint contains little substance but can generally be broken down into three categories. Counts I-III ask the Court to infer that CAC encouraged unidentified Marsh employees to "take Marsh's trade secrets" to CAC after leaving Marsh. (Compl. ¶¶ 1, 7, 19-21, 30, 37-39, 56-76). Count IV of Marsh's complaint is based on the assertion that two CAC employees (Michael Rice and Andre Eichenholz) breached their fiduciary duties while employed with JLT, and that CAC somehow aided and abetted the breaches. (Compl. ¶¶ 14-15, 31-35, 41-54, 78-83). Finally, Counts III and IV also complain that Marsh has received broker of record letters from former clients of Mr. Rice, clients that have left Marsh and moved their business to CAC. Marsh nowhere alleges that Mr. Rice solicited that business. (Compl. ¶¶ 41-43, 51-53, 73, 76, 81.)

### A. Marsh's "Trade Secret" and "Confidentiality Agreement" Assertions

Counts I and II of Marsh's complaint assert trade secret theories (under the Defend Trade Secrets Act and the Colorado Uniform Trade Secrets Act, respectively, *see* Compl. ¶¶ 57-63, 66-71), and Count III asserts in part that CAC tortiously interfered with unidentified employees' contractual provisions that "require[e] the employees to maintain the confidentiality of trade

---

[2] The factual findings from the federal court in Alabama provides the explanation Marsh cannot. With respect to business lost by McGriff, one client, MedNax, moved its business from McGriff to CAC Specialty. *McGriff*, 2019 WL 4600051, at *7. Despite an accusation that Mr. Sparks violated his non-compete agreement, the truth was innocent: a different, former JLT Specialty employee who was not prohibited from contacting the client won the business. *Id.*

secrets and confidential information" and "requir[e] the employees to return Marsh's and JLT Specialty USA's information at the end of their employment." (Compl. ¶¶ 73, 76.)

None of these allegations pleads any facts whatsoever about what anyone, let alone CAC, did wrong. Plaintiff claims that more than 30 employees have left Marsh for CAC. (Compl. ¶ 35.) It claims that "[f]orensic analysis of the [unidentified] departing employees' computers" shows that unidentified people accessed [unidentified] files, used [unidentified] USB devices, and deleted [unidentified information] from Marsh's systems. (Compl. ¶ 38.) Marsh then claims, without any factual basis, that CAC "misappropriated" this unidentified information by "acquiring" it from the unidentified former Marsh employees and "using the [unidentified] trade secrets to unfairly compete against Marsh." (Compl. ¶¶ 61-62.)

### B.    Marsh's "Fiduciary Duty" Assertions

Plaintiff's "fiduciary duty" assertions at least identify the people who supposedly breached fiduciary duties: Michael Rice and Andre Eichenholz. (Compl. ¶¶ 14-15, 41-44, 47, 49-53). Neither of these individuals is a defendant in this case. With respect to the individuals, Marsh's theory is that Messrs. Rice and Eichenholz solicited "Marsh and JLT Specialty USA's employees to leave for CAC Specialty while still employed by Marsh." (Compl. ¶ 80). That theory will be tested in mandatory arbitration involving Marsh, JLT Specialty, and these individual employees.[3]

---

[3]    Claims between JLT (now Marsh) and Mr. Rice are subject to an express arbitration provision in Mr. Rice's employment and separation agreements, and an arbitration between Mr. Rice, JLT, and Marsh, has been initiated. Mr. Eichenholz's agreements with JLT contained similar arbitration clauses. Given that the only specific employee conduct alleged is subject to mandatory arbitration, and CAC is alleged only to have "aided and abetted" conduct subject to arbitration, CAC is simultaneously filing a motion to stay this litigation

With respect to CAC, the only allegation is that it "set[] up a meeting so that employees could encourage each other to leave Marsh and JLT Specialty." (Compl. ¶ 82). Marsh claims that the meeting took place in June 2019 and involved Mr. Rice and employees from another insurance company, McGriff, Seibels & Williams, Inc. (Compl. ¶ 32.) As the Alabama proceeding that Marsh references found, at the time of the alleged meeting, CAC Specialty did not even exist. *McGriff*, 2019 WL 4600051, at *3.

### C. Marsh's "Lost Client" Theory

Finally, Marsh claims that it has received "a number of Broker of Record ("BOR") letters, which Marsh receives when a client decides to move its business to a new broker." (Compl. ¶ 41.) Marsh alleges that some of these letters relate to clients that unidentified former employees "were responsible for or otherwise worked on" while they worked at JLT Specialty/Marsh. (*Id.* ¶ 39.) Marsh does not allege that any CAC employee reached out to, solicited, or convinced ***any*** client whose business they worked on at JLT/Marsh to move their business to CAC. Instead, Marsh provides four unidentified clients—Clients A, B, C, and D—whose business it has lost to CAC Specialty over the past few months. (Compl. ¶ 42). Outside of the irrelevant and unsurprising fact that as CEO of JLT Specialty, Mr. Rice may have had some general connection to these alleged JLT Specialty clients, Marsh makes no allegation that any CAC Specialty employee took any action to convince these clients to move their business. (Compl. ¶ 43).

---

pending the outcome of the arbitration. It makes no sense for this court to rule on whether CAC "aided and abetted" conduct, or tortiously interfered with conduct, now, when only the arbitration tribunal can assess whether it was a breach of any contractual or legal duty to Marsh at all.

Following the Marsh/JLT merger, Marsh/JLT lost numerous employees and clients of the former JLT Specialty to other companies—not just CAC Specialty. Marsh has lashed out with a rash of threats and litigation against its former employees and their new employers. *See, e.g.,* Compl., *JLT Specialty Ins. Inc. v. NFP Prop. & Casualty. Servs., Inc.*, No. 19-cv-3921 (S.D.N.Y. May 1, 2019). Apparently unwilling to compete with its much-smaller competitors on the merits of the services they can offer clients and opportunities they can offer employees, Marsh has added this suit against CAC Specialty to its offensive. But without any facts required to sustain claims for misappropriation of trade secrets, tortious interference with contract, or aiding and abetting a breach of fiduciary duties, the Court should not allow it, and Marsh's complaint should be dismissed.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule 12(b)(6), a complaint "must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190-91 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Silva v. US Bank, Nat'l Ass'n*, 294 F. Supp. 3d 1117, 1124 (D. Colo. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). If the allegations are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik*, 671 F.3d at 1191.

7

<u>**ARGUMENT**</u>

**I.**   **MARSH DOES NOT STATE A TRADE SECRET MISAPPROPRIATION CLAIM.**

Marsh's grievance is not truly one for misappropriation of its trade secrets, but with its former employees for leaving one job in the insurance industry for another. ***Marsh fails to identify <u>any</u> person who purportedly stole any trade secrets or specific actions taken by these unidentified individuals to take Marsh trade secrets***. ***Marsh also fails to identify any actual trade secrets that were misappropriated or threaten to be misappropriated by CAC.***  To the best of CAC's knowledge, no court has permitted a plaintiff to proceed with a trade secret claim without identifying, even in the most general terms, the people who stole the alleged information, or what the stolen information is.  This Court should not start now.

**A.**   **Permitting Marsh's Claim Would Stretch Trade Secret Law beyond Recognition**

A complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Tennille v. Western Union Co.*, 751 F. Supp. 2d 1168, 1170 (D. Colo. 2010).  Here, Marsh's complaint provides no substance to put CAC on notice of its trade secret claim.  Marsh claims that more than 30 employees have left Marsh/JLT to join CAC Specialty. (Compl. ¶ 35.)  But nowhere in the Complaint does Marsh identify anyone who took anything, or (even by category) the trade secrets it claims were taken, let alone when or how the misappropriation allegedly took place.[4]  CAC cannot investigate and answer Marsh's allegations

---

[4]   No employees are tied to the misappropriation: the only employees named in the complaint at all (Messrs. Rice and Eichenholtz) are completely disconnected from Marsh's trade secret allegations.  There is no allegation that either Mr. Rice or Mr. Eichenholtz misappropriated anything.

when they lack such basic facts. *See Stender v. Gerardi*, 2008 WL 4452117, at \*13 (D. Colo. Sept. 30, 2008) (dismissing claim because ambiguity in complaint did not give defendants notice of the claim or the grounds on which it rested and deprived them of a fair opportunity to respond). Marsh's complaint against NFP demonstrates that it knows it must actually make factual allegations in a complaint. *See* Compl., *JLT Specialty Ins. Inc. v. NFP Prop. & Casualty. Servs., Inc.*, No. 19-cv-3921 (S.D.N.Y. May 1, 2019). But here, where no facts exist to support its claims, Marsh merely reproduces much of the same complaint, but stripped of its facts; that is improper.

The complete lack of facts in the Complaint suggests that Marsh is asking this Court to impose a strict liability standard on CAC because it hired people who, at most, might have knowledge of general aspects of their former employer's business. Colorado law specifically and sensibly rejects this competition-stifling approach to trade secret misappropriation claims. *See Ciena Commc'ns, Inc. v. Nachazel*, 2010 WL 3489915, at \*4 (D. Colo. August 31, 2010) ("Indeed, such an absolute rule—essentially imposing strict liability on a corporation that hires a person possessing others' trade secrets—is contrary to the very language of the Uniform Trade Secrets Act."). Rather than offering factual allegations about specific people taking and using specific information (so that, among other things, one can assess whether it is a trade secret at all), Marsh relies on the fact that employees left Marsh to join CAC Specialty, and baldly states that because they work for another insurance broker, "[t]hose employees necessarily have used Marsh's confidential information." (Compl. ¶ 39.) That is not and cannot be the law.

Marsh's claim is most charitably characterized as one for inevitable disclosure—a doctrine that has never been applied in Colorado and certainly cannot apply to the allegations

pled here.  Indeed, Marsh's first claim is pled under the Defend Trade Secrets Act, 18 U.S.C. § 1836 (the "DTSA").  (Compl. ¶¶ 57-64).  But the DTSA does not permit inevitable disclosure claims.  Rather, its plain text prohibits injunctions that "prevent[] a person from entering into an employment relationship," and while some limited injunctions placing conditions on employment are permitted, they must be "based on evidence of threatened misappropriation and not merely on the information a person knows."  18 U.S.C § 1836(b)(3)(A)(i)(I).  By prohibiting injunctions based on employee knowledge—the definition of inevitable disclosure—Congress closed off such claims.

With respect to Count II of the Complaint (brought under the Colorado Uniform Trade Secrets Act, *see* Compl. ¶¶ 65-71), Marsh fares no better.  No Colorado court has ever allowed a claim for inevitable disclosure of trade secrets.  On the rare occasions courts in Colorado have even mentioned the inevitable disclosure doctrine, they have not been generous.  *See Cargill Inc. v. Kuan*, 2014 WL 5336233, at *7 (D. Colo. Oct. 20, 2014) ("The [CUTSA] speaks not of 'inevitable disclosure' but, rather, of 'threatened disclosure.'")

But even if Colorado did recognize an inevitable disclosure theory, it would not apply here.  The court in *Xantrex Tech. Inc. v. Adv. Energy Indus., Inc.* made clear the inevitable disclosure could only apply when there were specific allegations of specific bad actions *by the specific employees against whom the trade secrets claim is brought*.  *See* 2008 WL 2185882, at *19 (D. Colo. May 23, 2008).  Marsh has made no such allegations.  Indeed, in jurisdictions that have adopted the inevitable disclosure doctrine, the doctrine is applied to enjoin *a specific person's* imminent employment; the theory does not give rise to a claim against the person's *new employer*, nor does it give rise to a claims for damages at all.  *See, e.g., Del Monte Fresh*

10

*Produce Co. v. Dole Food Co., Inc.*, 148 F. Supp. 2d 1326, 1335 (S.D. Fla. 2001) ("In an inevitable disclosure case, a court can issue an injunction to prevent an employee from working for the former employer's competitor if the employer can demonstrate a real and present danger of disclosure.")[5]

Inevitable disclosure has never been used—as Marsh attempts—against *a company* because it hired a number of former employees from a rival firm, with no details about their former or current employment, months after they left their former employer.  *See IKON Office Solutions, Inc. v. American Office Prods., Inc.*, 178 F. Supp. 2d 1154, 1169 (D. Or. 2001) (collecting cases to demonstrate "[a] court cannot compel a man who changes employers to wipe clean the slate of his memory.")  Marsh's threadbare claim has no basis in trade secret law and should be rejected.

**B.      Marsh Fails to Identify Any Trade Secrets That Were or Threaten to be Misappropriated by CAC**

A plaintiff must "explain what ***specific facts*** that have led [Plaintiff] to the conclusion that [Defendant] has misappropriated or threatens to misappropriate the trade secrets."  *Ciena*, 2010 WL 3489915, at *4 (emphasis added).  Marsh has failed to allege the facts necessary to

---

[5]      More generally, the inevitable disclosure doctrine "treads an exceedingly narrow path through judicially disfavored territory…the doctrine should be applied in only the rarest of cases."  *Janus et Cie v. Kahnke*, 2013 WL 5405543, at *3 (S.D.N.Y. August 29, 2013) (citation omitted).  "In such cases, the court is essentially asked to bind the employee to an implied-in-fact restrictive covenant based on a finding of inevitable disclosure," even though Marsh alleges that the former JLT Specialty employees had previously agreed to prohibitions on soliciting their former customers for a limited period of time.  *Id.* at *3 (internal quotation omitted).  Permitting such an implied restrictive covenant would run afoul of Colorado's strong public policy against covenants not to compete.  *See Cocona, Inc. v. Singtex Indus. Co., Ltd.*, 2014 WL 5072730, at *3 (D. Colo. Oct. 9, 2014).

support the elements of trade secret misappropriation under either Colorado or federal law. *See Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993) (listing elements of trade secret misappropriation under Colorado's Uniform Trade Secret Act); *Artic Energy Servs., LLC v. Neal*, 2018 WL 1010939, at \*2 (D. Colo. Feb. 22, 2018) (listing similar elements for federal Defend Trade Secrets Act). Instead, when Marsh's complaint describes *CAC's* conduct, it is innocent: hiring employees and competing for business. *See Khalik*, 671 F.3d at 1191.

Colorado courts dismiss misappropriation claims such as this one that lack "any specific factual allegations" of the key factual elements of misappropriation. *See, e.g., RE/MAX, LLC v. Quicken Loans, Inc.*, 295 F. Supp. 3d 1163, 1175 (D. Colo. 2018). In *RE/MAX*, Quicken Loans and RE/MAX performed a joint venture together, sharing confidential information. *Id.* at 1166. RE/MAX then launched its own business, Motto Mortgage, that "provide[d] services similar to those provided by Quicken Loans" just one month after it sent notice of default to Quicken Loans. *Id.* at 1167. Quicken Loans sued.

Quicken Loan's allegations were similar to Marsh's generic and conclusory allegations in this case. *Id.* at 1175-76. On a motion to dismiss, the Court rejected Quicken Loans' claim for trade secret misappropriation for two reasons, both equally applicable to Marsh's claim here.

First, Motto Mortgage failed to identify what information was allegedly misappropriated, merely stating what information RE/MAX could access as part of the joint venture.[6] *Id.* at 1174.

---

[6] This finding was made before the case was transferred to the District of Colorado. *Id.* at 1173-74. Once transferred, Quicken Loans added specific facts "describing two trade secrets with more particularity," including "unique technology that could identify any lead generated by a RE/MAX agent or the remax.com website[,] how that lead could be directed from the

12

In the same way, Marsh's complaint merely states the innocent fact that the unnamed JLT employees who joined CAC Specialty had access to JLT information.  (Compl. ¶¶ 21-30.). Second, Motto Mortgage's employment of employees who had access to confidential Quicken Loans' information was not enough to state a claim for trade secret misappropriation because Quicken's claims "lack any specific factual allegations of disclosure of trade secrets to Motto by RE/MAX's former employees and also lack any specific factual allegations of how such employees used Quicken Loans' trade secrets at Motto." *Id*. at 1175.  The Court determined that it could not infer that RE/MAX misappropriated trade secrets merely because it was a competitor with an alleged motive to do so.  *Id*.  "[W]ithout ***specific factual averments***" of trade secret misappropriation, Quicken Loans could not state a claim.  *Id*. at 1175 (emphasis added) (internal quotation omitted).  So too here.

Marsh's complaint includes no facts, merely legal conclusions, for the most important allegations in their complaint.  For instance, the complaint does not identify:

   (a)   The identity of the employees who took the unidentified information,
   (b)   What confidential information any former employee allegedly took, or
   (c)   When and how this supposed misappropriation took place.

CAC cannot defend itself if Marsh will not allege concrete actions that CAC supposedly took. *See Ciena*, 2010 WL 3489915, at *4 (Requiring the party pleading trade secrets to "explain what ***specific facts*** [] have led [plaintiff] to the conclusion that [defendant] has misappropriated or

---

RE/MAX agent or the remax.com website to Quicken Loans[,] and how to secure customized information about that homebuyer's location and needs." *Id* at 1174 (alterations original). With these additional allegations, the Court did not dismiss on this ground. *Id*.  By contrast, Marsh has never specified the nature of the confidential information allegedly misappropriated.  Nor has Marsh identified the *people* who supposedly took the information.

threatens to misappropriate the trade secrets.") (emphasis added). Rather than pleading facts that do not exist, Marsh tries to stack up generic and irrelevant assertions in the hope that the Court will make a massive and novel inference in its favor that: because unidentified employees had access to unidentified confidential information, they somehow removed the confidential information and then used it, causing Marsh to lose business. Marsh has not demonstrated that such an inference is plausible and the Court should dismiss this claim. *See Edifecs Inc. v. TIBCO Software, Inc.*, 756 F. Supp. 2d 1313, 1321 (W.D. Wash. 2010) ("Without something more tangible, the Court finds the complaint too speculative to state a viable claim for relief.").

Based on the barebones allegations brought by Marsh, it is equally plausible (if not more so) that Marsh clients simply moved to join CAC Specialty for any number of innocent reasons, including that CAC Specialty presented a superior option for their business due to superior skills, other non-former-JLT relationships that were useful, they were dissatisfied their account had moved from JLT to Marsh, or perhaps they wanted to give a new player in the industry a try. *See McGriff*, 2019 WL 4600051, at *7 (describing CAC Specialty's solicitation of former McGriff client by employees who were not barred from contacting the client). There is no reason to infer from Marsh's complaint that the movement of unidentified clients had anything to do with the misappropriation of unidentified trade secrets by unidentified former employees or other unidentified misconduct. When the allegations in a complaint include large amounts of innocent conduct, the claims are not plausible and should be dismissed. *Khalik*, 671 F.3d at 1191.

## II. MARSH'S TORTIOUS INTERFERENCE WITH CONTRACT CLAIM FAILS AS A MATTER OF LAW.

Marsh also fails to allege a tortious interference with contract claim. To do so, Marsh would need to plead facts suggesting that, *i.e.,* that "(1) a contract existed; (2) the defendant had knowledge of the contract; (3) the defendant interfered and induced the other party to breach the contract; and (4) the plaintiff was injured as a result." *Phillips v. Carpet Direct Corp.*, 2017 WL 121630, at *13 (D. Colo. Jan. 10, 2017).

**Contract.** Marsh failed to identify any specific contract (it attached none to its complaint) or allege what provision of any contract was violated. Instead, Marsh offers boilerplate allegations that unknown former employees violated unstated provisions. Without specifically identifying which contracts are violated and which provisions were breached, Marsh has failed to state a claim. *See, e.g., Cunningham Lindsey U.S. Inc. v. Crawford & Co.*, 2018 WL 6307865, at *2-3 (D. Colo. Dec. 3, 2018) (dismissing tortious interference claim based on hiring former employees because Plaintiff included "no specific factual allegations regarding which contracts are even in dispute, nor is a single contract identified that Defendant [] purportedly interfered with.")

**Interference.** Nor has Marsh alleged that CAC took any form of action that would improperly interfere with an employment contract. Under Colorado law, a plaintiff has not shown improper interference with an employment contract when the defendant's conduct "(1) [] concerns a matter of competition between the defendant and plaintiff; (2) the defendant does not employ wrongful means; (3) the action does not amount to an unlawful restraint of trade; and (4) the defendant's purpose is, at least in part, to advance its own interest." *Ouedrago v. Downtown*

*Denver Bus. Improvement Dist.*, 2014 WL 559962, *10 (D. Colo. Feb. 13, 2014) (quoting *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp. 2d 1048, 1082 (D. Colo. 2004)). "'Wrongful means' include physical violence, fraud, civil suits, and criminal prosecutions" or economic pressure. *Id*. Marsh has not alleged that CAC took any act resembling wrongful means under Colorado law. (Compl. ¶ 75). Instead, the allegations in the complaint describe nothing more than fair competition: CAC Specialty has convinced some clients that they are better served by it rather than Marsh. Marsh provides no facts to support the inference it seeks, that unnamed former-JLT Specialty employees breaching unspecified provisions of their employment contract were the reason that any business changed hands. *Khalik*, 671 F.3d at 1191 (describing actions that could be innocent not sufficient to state a claim).

Colorado courts dismiss tortious interference claims in nearly identical circumstances. In *Cunningham Lindsey*, a group of employees left Cunningham Lindsey for Crawford, and afterwards a group of former Cunningham Lindsey clients brought their business to Crawford. *Cunningham Lindsey*, 2018 WL 6307865, at *1-3. Though Crawford was alleged to have organized a mass resignation of Cunningham Lindsey's employees in order to drive business away from Cunningham Lindsey, the Court dismissed the claims as pled because there were no allegations of "threats of physical violence, fraud, or civil or criminal lawsuits" or economic harm such as, "an unlawful restraint of trade or a violation of antitrust laws." *Id*. at 2-4. Marsh's claims should be dismissed on the same basis.

### III. MARSH HAS NOT STATED A VALID CLAIM FOR AIDING AND ABETTING A BREACH OF FIDUCIARY DUTIES.

Finally, Marsh has failed to allege that CAC Specialty aided and abetted a breach of fiduciary duties. Marsh has failed to allege any facts suggesting a breach by a fiduciary of a duty owed to plaintiff, and CAC's knowing participation in the breach. *Holmes v. Young*, 885 P.2d 305, 308-09 (Colo. App. 1994).

As a threshold matter, perhaps in search of a claim, Marsh refers vaguely to an unknown number of "employees" other than Mr. Rice and Mr. Eichenholtz who allegedly breached a duty of good faith. Marsh includes no identifying information or allegations as to who these people are, let alone what any of them did to allegedly breach their fiduciary duty. That does not state a claim. *See Alattar v. Bell*, 2014 WL 4851655, at *2-3 (D. Colo. Sept. 29, 2014) (dismissing aiding and abetting breaches of fiduciary duty claim because the allegations were too vague and conclusory); *Mandelbaum v. Fiserv, Inc.*, 787 F. Supp. 2d 1226, 1242 (D. Colo. 2011) (dismissing aiding and abetting fiduciary duty claims for being vague). Indeed, employees have a right to prepare to compete, and the complaint is bereft of any facts suggesting that any employee improperly competed with Marsh or failed to act for Marsh's benefit during their employment. *Jet Courier Serv., Inc. v. Mulei,* 771 P.2d 486, 498 (Colo. 1989).

The allegations against Messrs Rice and Eichenholtz will be tested in arbitration, and the complaint allegations (by Marsh's admission) rely entirely on supposition and conclusion. The allegations that Mr. Eichenholtz worked with Client A, Mr. Rice had some degree of oversight, and both later were employed by CAC Specialty, does not imply that anyone breached any duty to JLT. To state a claim that CAC aided and abetted a breach of fiduciary duty, Marsh would

have to at least plead *actual breach*, and Marsh's inability to plead in good faith that a specific person solicited a client they should not have solicited demonstrates Marsh cannot do so.

In any event, Marsh has brought this claim *against CAC*. And Marsh has certainly not alleged any facts at all suggesting that CAC was a "knowing participant" in any breach of fiduciary duty. *Alvarez LLC v. Blazar Tech. Solutions, LLC*, 2019 WL 3205952, at *2 (D. Colo. July 16, 2019) (requiring plaintiff to demonstrate defendant's actual knowledge of the breach of fiduciary duties, not just constructive knowledge). Marsh's only allegation regarding CAC is that in June 2019, it hosted a meeting involving JLT employees and employees of another insurance broker (McGriff, Seibels & Williams) where there was supposedly discussion about employees of both companies joining CAC Specialty. (Compl. ¶ 32.) Even if merely hosting a meeting to discuss employment opportunities at a new firm could be sufficient to aid and abet a breach of fiduciary duty (and CAC is aware of no authority, in Colorado or elsewhere, suggesting it is), the findings from the Alabama federal court demonstrate how backwards Marsh has this. At the time of the alleged meeting, CAC Specialty did not exist. *See McGriff,* 2019 WL 4600051, at *3. A non-existent entity with no employees cannot knowingly participate in a breach of fiduciary duties. *See Precision Fitness Equipment v. Nautilus, Inc.*, 2009 WL 2169361, at *5 (D. Colo. July 20, 2009) ("a corporation can act only through its people."). And in any event, it is not aiding and abetting a breach of any duty to try to hire someone merely because they are already employed by another. *See Cunningham Lindsey*, 2018 WL 6307865, at *5 (finding that intentionally hiring several of plaintiff's employees would not be improper). Without any plausible allegation *that CAC directed* a breach during a meeting that happened before CAC Specialty even existed, Marsh's "aiding and abetting" claim must be dismissed.

## **CONCLUSION**

Marsh alleges that some unidentified employees of CAC stole some unidentified piece of information, at an unidentified time. It also claims that some unidentified clients have left Marsh for CAC, but cannot allege that they were solicited or called on by anyone who is prohibited from doing so. And Plaintiff alleges that CAC hosted a meeting between disgruntled Marsh and McGriff employees to discuss potential employment opportunities at CAC Specialty. These allegations do not justify a lawsuit. For the foregoing reasons, Defendant respectfully requests the Court dismiss Marsh's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: January 9, 2020

Respectfully submitted,

 /s/ William M. Ojile, Jr.
William M. Ojile, Jr.
ARMSTRONG TEASDALE LLP
4643 S. Ulster St.
Denver, CO 80237
Telephone: (720) 200-0676
Facsimile: (720) 200-0679
Email: bojile@armstrongteasdale.com

Michael B. Slade
Mark Premo-Hopkins
Howard Kaplan
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email:
michael.slade@kirkland.com
mark.premohopkins@kirkland.com
howard.kaplan@kirkland.com

*Counsel for Defendant*
*Cobbs Allen Capital, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 9, 2020, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ William M. Ojile, Jr.*
William M. Ojile Jr.
