**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

|  |  |  |
|---|---|---|
| Marsh USA, Inc., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **Case No. 1:19-cv-03266-STV** |
| | ) | |
| Cobbs Allen Capital, LLC, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING ARBITRATION
BETWEEN PLAINTIFF MARSH USA INC. AND MICHAEL RICE AND
MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION...................................................................................................1

FACTUAL BACKGROUND....................................................................................2

ARGUMENT.........................................................................................................6

I.   A STAY WILL AVOID POTENTIALLY INCONSISTENT AND CONFUSING
     RESULTS .......................................................................................................7

II.  THE ARBITRATOR'S DECISIONS WILL RESOLVE, OR HELP RESOLVE,
     MANY OF THE ISSUES RELEVANT TO THIS LITIGATION ..............................11

III. A STAY WILL PROMOTE JUDICIAL ECONOMY................................................13

IV.  MARSH WILL NOT BE PREJUDICED BY A STAY .................................................14

CONCLUSION ....................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,*
    242 F.3d 777 (8th Cir. 2001) ...................................................................................7

*Allen v. McCurry,*
    449 U.S. 90 (1980).................................................................................................12

*Barnett v. Elite Props. Of Am.,*
    252 P.3d 14 (Colo. App. 2010) .............................................................................12

*Brahma Grp., Inc. v. Ames Constr., Inc.,*
    2015 WL 8308134 (D. Colo. Dec. 9, 2015)..........................................................11

*Chelsea Family Pharmacy, PLLC v. Medco Health Sols., Inc.,*
    567 F.3d 1191 (10th Cir. 2009) ...........................................................................11

*Cobra North America, LLC v. Cold Cut Sys. Svenska AB,*
    639 F. Supp. 2d 1217 (D. Colo. 1998)............................................................11, 14

*Frazier v. Western Union Co.,*
    377 F. Supp. 3d 1248 (D. Colo. 2019)...................................................................9

*Guar. Nat'l Ins. Co. v. Williams,*
    982 P.2d 306 (Colo. 1986)...................................................................................12

*Harwest Indus. Minerals Corp. v. Twin City Fire Ins. Co.,*
    No. 09–cv–01089–SLW–MJW, 2010 WL 1729805 (D. Colo. Apr. 28, 2010).........7, 8, 11, 13

*Keyes v. School Dist. No. 1, Denver, Colo.,*
    895 F.2d 659 ........................................................................................................12

*Landis v. North American Co.,*
    299 U.S. 248 (1936).............................................................................................7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983)................................................................................................7

*Rocky Mountain Tech. Eng'g Co., LLC v. Kamlet, Shepherd & Reichert, LLP,*
    No. 08–cv–01797–REB–BNB, 2009 WL 952099 (D. Colo. Apr. 7, 2009) .........................7, 8

*SIL-FLO, Inc. v. SFHC, Inc.,*
    917 F.2d 1507 (10th Cir. 1990) ...........................................................................12

*Swan Global Investments, LLC v. Young*,
    2019 WL 5095729 (D. Colo. Aug. 20, 2019) ........................................................................12

*United States ex rel. Frank M. Sheesley Co. v. St. Paul Fire and Marine Ins. Co.*,
    239 F.R.D. 404 (W.D. Pa. 2006) .........................................................................................14

**Rules**

Fed. R. Civ. P. 65(d) ..................................................................................................................12

Defendant Cobbs Allen Capital, LLC, d/b/a CAC Specialty, respectfully moves for an order staying this litigation pending the resolution of an arbitration to which Plaintiff Marsh USA Inc. ("Marsh") is a party and which involves the same subject matter as this action.

## **INTRODUCTION**

This action springs from the merger of two giants in the insurance broker world, Marsh & McLennan Companies and JLT Group, who now aim to stamp out any competition from former employees who left or were constructively discharged as a result of the merger.  In particular, Marsh has targeted the former CEO of JLT Specialty Insurance Services, Inc. ("JLT Specialty" or "JLT"), Michael Rice, who Marsh accuses of violating contractual duties that he allegedly owed to Marsh/JLT[1] during and after his employment.  But despite referring to Mr. Rice repeatedly in its Complaint, Marsh names only Cobbs Allen Capital, Mr. Rice's new employer, as a defendant in this action while Mr. Rice himself is conspicuously absent.  Marsh's reason for omitting Mr. Rice as a defendant is transparent and obvious:  Marsh seeks to side-step its obligation to arbitrate confidentially any disputes with Mr. Rice, and instead air its grievances against Mr. Rice indirectly and on the public record in this lawsuit filed against his employer.

Though Marsh may prefer this forum to arbitration, as here it believes it can publicly disparage and intimidate Mr. Rice and other former employees, Marsh should not be permitted to circumvent its obligation to arbitrate by declining to name Mr. Rice as a defendant and asserting

---

[1]   The Parties to Mr. Rice's Employment Agreement and Separation Agreement were JLT Specialty Insurance Services Inc., a Delaware corporation, (together with its successors and assigns) and Mr. Rice.  On April 1, 2019, Marsh USA, Inc.'s parent company, Marsh & McLennan Companies, Inc., acquired Jardine Lloyd Thompson Group, the indirect parent company of JLT Specialty Insurance Services Inc.  According to the Complaint, on September 1, 2019, "JLT Specialty Insurance Services Inc. merged into Marsh USA Inc." (Compl. ¶ 3).

various derivative claims against CAC Specialty, the specialty insurance broker where Mr. Rice is now CEO.  Mr. Rice has commenced arbitration proceedings against Marsh, as provided in his employment contracts, because Marsh, relying on the same allegations in its Complaint here, unilaterally forfeited his right to continued separation payments under his Separation Agreement. The issues to be arbitrated are central to the claims Marsh asserts against CAC in this proceeding, and any claims that Mr. Rice breached any duty to JLT (the primary claims, to which the allegations in Marsh's claims here are only derivative), must be arbitrated.  Thus, as a matter of judicial economy and in accordance with the strong federal policy favoring arbitration agreements, the Court should exercise its discretion to stay this action until the arbitration between Mr. Rice and Marsh has concluded.

## FACTUAL BACKGROUND

Mr. Rice's former employer, JLT Specialty, is a subsidiary of Jardine Lloyd Thompson Group, PLC—a large, London-based insurance broker.  JLT Specialty launched in August 2014 after recruiting Mr. Rice to serve as the company's CEO.  (Compl. ¶ 14).  Before Mr. Rice agreed to join the company, JLT assured him that it would not be sold to another large broker, such as Marsh.  (*See* Exhibit 1, Declaration of Michael D. Rice ("Rice Decl.") at ¶ 4).

Upon hiring Mr. Rice, JLT had him execute an Employment Agreement which, among other things, contained certain covenants regarding solicitation of JLT customers and employees following the end of Mr. Rice's employment.  (Compl. ¶ 14).  The Employment Agreement also contained an arbitration clause stating: "Any Claim between the Parties arising out of or relating to this Agreement, any Company Arrangement, the Executive's employment with the Company

or any of its Affiliates, or any termination thereof . . . shall . . . be resolved by binding confidential arbitration . . . ." (Rice Decl., ¶ 7; Ex. A ¶ 14).

After joining JLT, Mr. Rice succeeded over the next five years in helping the company grow into a leading specialty insurance firm.  But despite that success, and contrary to JLT Group's promise that such a transaction would never occur, a wholly-owned subsidiary of Marsh & McLennan Companies, Inc. acquired JLT Specialty's indirect parent company on April 1, 2019.  (Compl. ¶ 11).  Even before this transaction was formally consummated, Mr. Rice and Marsh/JLT agreed that Mr. Rice would not have a role in the newly-formed business and he was placed on paid leave in March 2019 pending negotiation and execution of a Separation Agreement.  (Rice Decl. ¶ 9).

Mr. Rice and Marsh/JLT negotiated a Confidential Separation Agreement and General Release, which the parties executed on April 26, 2019 (the "Separation Agreement").  (Compl. ¶ 15).  Under the Separation Agreement Mr. Rice agreed to immediately vacate his seat on JLT's Board of Directors and remain on paid leave until July 31, 2019, at which time his employment with JLT would be terminated.   (Rice Decl. ¶ 11).  In return, Marsh/JLT agreed to make severance payments to Mr. Rice over the next 19 months following the end of his employment, as well as purchase shares held by Mr. Rice in JLT and its parent company.  (Rice Decl. ¶ 11).

Marsh alleges in the Complaint that by executing the Separation Agreement, Mr. Rice also "affirmed and reiterated [his] obligation not to use or disclose confidential or trade-secret information after his employment ended, and affirmed and reiterated the restrictive covenants in his [Employment] Agreement."  (Compl. ¶ 16).  Marsh neglects to mention, however, that the Separation Agreement (and the Employment Agreement) expressly permitted Mr. Rice to

continue working in the insurance industry once his employment with JLT ended on July 31, 2019.[2]   (Rice Decl. ¶¶ 6, 14).   Marsh did not attempt to negotiate for clearer language in the Separation Agreement prohibiting Mr. Rice from taking on the role of CEO at another insurance broker.  (Rice Decl. ¶ 15).  Rather, it appears that Marsh intended all along to accept concessions from Mr. Rice in negotiating the Separation Agreement (such as a smaller severance), and then renege on its promises and begin filing lawsuits the moment Mr. Rice began work at another company.

Marsh also fails to mention in the Complaint that the Separation Agreement, like Mr. Rice's Employment Agreement, contained an arbitration clause.   Like the Employment Agreement, the Separation Agreement states that "[a]ny Claim between the Parties arising out of relating to this Agreement, any other agreement between the parties, the Employee's employment with Employer or any of its affiliates, or any termination thereof" shall be resolved by binding confidential arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association.  (Rice Decl. ¶ 12).

During the spring of 2019, while on leave from JLT, Mr. Rice began exploring new employment options.[3]  (Rice Decl. ¶ 18).  Mr. Rice discussed potential opportunities with several firms both inside and outside the insurance brokerage industry.  (Rice Decl. ¶ 18).  Among the

---

[2]   In fact, when announcing in April 2019 that Mr. Rice would be leaving the company, a JLT executive stated it was "going to suck" competing against Mr. Rice starting in August 2019. (Rice Decl. ¶ 16).

[3]   JLT was aware that Mr. Rice was exploring post-JLT employment options.  JLT's General Counsel, Stephen Shappel, advised Mr. Rice that it was not a violation of his fiduciary or employment duties to JLT to take meetings with potential employers while he was on leave. (Rice Decl. ¶ 20).  In fact, Mr. Shappel encouraged Mr. Rice to do so.  (Rice Decl. ¶ 20).

firms that Mr. Rice met with was Cobbs Allen, who at the time was developing the idea of forming a specialty insurance broker.  (Rice Decl. ¶ 19).  Mr. Rice considered the CAC Specialty concept to be one potential option among many.  (Rice Decl. ¶ 19).

CAC Specialty launched in mid-August 2019.  (Rice Decl. ¶ 21).  On September 23, 2019—weeks after his employment with JLT Specialty ended on July 31—Mr. Rice joined CAC Specialty as the company's Chief Executive Officer.  (Rice Decl. ¶ 21).

Shortly thereafter, on October 11, 2019, Marsh sent a letter to Mr. Rice informing him that it would not perform its obligations under the Separation Agreement and would not be making the severance payments to which Mr. Rice was entitled.  (Rice Decl. ¶ 22).  Marsh attempted to justify its flagrant breach of the Separation Agreement by accusing Mr. Rice of violating the restrictive covenants in his Employment Agreement.  (Rice Decl. ¶ 22).  However, Marsh did not identify a single customer that Mr. Rice had improperly solicited, and instead claimed only that it was "simply impossible" for Mr. Rice to do his job without violating the restrictive covenants (*see* Rice Decl., Ex. B)—an audacious assertion that Marsh repeats in the Complaint.  (Compl. ¶ 43).

Not content with breaching its duties under the Separation Agreement, Marsh lashed out further by commencing this action on November 18, 2019.  Here, in a transparent attempt to avoid arbitration and publicly disparage Mr. Rice, Marsh seeks to hold only *CAC Specialty* liable for Mr. Rice's alleged misconduct (as well as the misconduct of other former JLT Specialty employees who go almost entirely unnamed in the Complaint and about whom Marsh alleges no specific facts).

Based on Marsh's failure to make good on its commitments under the Separation Agreement, Mr. Rice commenced arbitration proceedings against Marsh and related Marsh/JLT entities on January 3, 2020 (the "Marsh-Rice Arbitration"), as provided in the Employment and Separation Agreements.  (Rice Decl. ¶ 32; Ex. D).  In that arbitration Mr. Rice seeks to recover the payments he is owed under his Separation Agreement and damages for the harm caused by Marsh's disparaging accusations against Mr. Rice in this action.  (Rice Decl. ¶ 32).  Mr. Rice is also seeking a declaratory judgment that he has fulfilled all of his obligations under the Employment and Separation Agreements, including complying with all restrictive covenants, and that it is in fact Marsh that has materially breached the Separation Agreement.  (Rice Decl. ¶ 32).

For its part, CAC maintains that Marsh's claims in the present action are devoid of merit and should be dismissed for the reasons stated in the Rule 12 motion filed concurrently herewith. But should any of Marsh's claims survive Defendant's Rule 12 motion, the Court should stay those claims pending resolution of the arbitration between Marsh and Mr. Rice, which may determine the outcome of most, if not all, of the claims and issues Marsh alleges in this lawsuit.

## ARGUMENT

Given the extent to which this case turns on issues that Marsh has agreed to arbitrate with Mr. Rice and will be resolved in the arbitration currently pending between them, this Court should exercise its inherent power to stay this action "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).  That power includes the authority to stay a lawsuit pending the resolution of related arbitration proceedings—in fact the Supreme Court has expressly acknowledged that there are cases in which it is sensible to do just that.  *See Moses H.*

*Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983) ("In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration.  That decision is one left to the district court . . . as a matter of its discretion to control the docket."); *see also Rocky Mountain Tech. Eng'g Co., LLC v. Kamlet, Shepherd & Reichert, LLP*, No. 08–cv–01797–REB–BNB, 2009 WL 952099, at *2 (D. Colo. Apr. 7, 2009) ("I have discretion to stay non-arbitrable claims until arbitration is completed."). In circumstances such as these, federal courts have also recognized that in addition to promoting judicial economy, a discretionary stay "may well be needed to further the strong federal policy favoring agreements to arbitrate." *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 242 F.3d 777, 782 (8th Cir. 2001).

The Tenth Circuit Court of Appeals has not articulated a specific test for determining when the District Court should stay a matter before it pending the parallel arbitration of arbitrable claims. *See Harvest Indus. Minerals Corp. v. Twin City Fire Ins. Co.*, No. 09–cv–01089–SLW–MJW, 2010 WL 1729805, at *1 (D. Colo. Apr. 28, 2010).  However, courts in this district have considered such factors as: "(1) the avoidance of confusion and possible inconsistent results; (2) considerations of judicial economy; (3) the extent to which the parties will be bound by the arbitrator's decision; and (4) the prejudice that may result from delays." *Id.*; *see also Rocky Mountain Tech.*, 2009 WL 952099, at *2 (listing same set of factors).  Each of these factors weighs strongly in favor of granting a stay in this case.

## I.   A STAY WILL AVOID POTENTIALLY INCONSISTENT AND CONFUSING RESULTS

There can be little doubt that the claims asserted and the relief sought by Marsh in this action are unavoidably intertwined with issues to be decided in the Marsh-Rice Arbitration.  The

resulting likelihood of confusing or inconsistent judgments if both proceedings go forward in tandem weighs strongly in favor of granting a stay. *Harwest*, 2010 WL 1729805, at *1.

The potential for inconsistent or confusing results is immediately apparent from Marsh's "Prayer for Relief," which specifically requests that the Court "enter a permanent injunction prohibiting CAC Specialty from providing services to any current or former Marsh or JLT Specialty USA clients *that would result in a breach of Mr. Rice's contractual obligations to Marsh.*" (Compl. at 20 (emphasis added)).  Granting such relief would necessarily involve interpreting Mr. Rice's Employment and Separation Agreements and determining what is and is not prohibited by the restrictive covenants.  Not only is that issue squarely within the scope of the Agreements' arbitration clauses, but the scope and interpretation of Mr. Rice's restrictive covenants, and whether he has violated those covenants by his employment by CAC Specialty, are precisely at issue in the Marsh-Rice Arbitration.  Marsh's request for an injunction tethered to Mr. Rice's contractual obligations makes the risk of this action and the Marsh-Rice Arbitration producing inconsistent or confusing results nearly unavoidable.

Such a scenario could put Mr. Rice and CAC in a precarious situation; if Mr. Rice, as a CAC employee, were bound to comply with a judgment or injunctive order from this Court, he potentially could be barred from engaging in conduct that the arbitrator expressly authorized. Not only would this create confusion, but it would also potentially nullify the arbitrator's decision, undermining both the intent of the parties to have issues pertaining to the Agreements determined by an arbitrator and the well-established federal policy of giving effect to arbitration agreements.  *See, e.g., Frazier v. Western Union Co.*, 377 F. Supp. 3d 1248, 1254-56 (D. Colo. 2019) (recognizing the "strong federal policy in favor of arbitration agreements under the

FAA").  To avoid such a situation, this matter should be stayed until the Marsh-Rice Arbitration has concluded and the arbitrator has had the opportunity to interpret the terms of Mr. Rice's Agreements in the first instance, as the parties to those Agreements intended.

Defining the appropriate injunctive relief due to Marsh (if any) is not the only issue that overlaps with the Marsh-Rice Arbitration.  Resolving the merits of Marsh's claims in this action also will require the Court to interpret the restrictive covenants in Mr. Rice's Employment and Separation Agreements and determine whether he has complied with those covenants—issues that Marsh/JLT agreed should be decided by the arbitrator.  Marsh should not be able to circumvent its agreement to arbitrate simply by suing the entity for whom Mr. Rice serves as CEO and asking the Court to burden Mr. Rice through relief against his employer.

For instance, Marsh's Fourth Claim for "Aiding and Abetting Breaches of the Duty of Loyalty and Fiduciary Duties" is based on allegations made directly against Mr. Rice (as well as Mr. Eichenholtz) and whether he "faithful[ly] perform[ed]" his job duties and responsibilities. (Compl. ¶ 79).  As explained above, Marsh has agreed that issues pertaining to Mr. Rice's employment are matters that fall squarely within the scope of the arbitration clauses in Mr. Rice's Agreements and should be decided by the arbitrator in the first instance.  (*See* Rice Decl., Ex. B ¶ 14 (requiring arbitration of claims relating to "[Mr. Rice's] employment with the Company or any of its affiliates")).  Likewise, Marsh's Third Claim for "Interference with Contractual Relations" is based on alleged contractual violations by Mr. Rice and other former Marsh/JLT employees and therefore directly implicates Mr. Rice's Employment and Separation Agreements.

The bottom line is that the arbitrator in the Marsh-Rice Arbitration will decide the exact same issues present here.  As Mr. Rice explains in his Arbitration Demand, Marsh has accused him, without any evidence, of violating the terms of his Employment Agreement and has refused to perform under the Separation Agreement based on those purported breaches.  (Rice Decl. ¶ 32).  Specifically, Marsh told Mr. Rice on October 11, 2019 that it was it was withholding Mr. Rice's severance payments because it was "simply impossible" for him to work for CAC Specialty without violating his restrictive covenants or without using JLT/Marsh's confidential information.  (Rice Decl., Ex. B).  To resolve Mr. Rice's arbitration claims the arbitrator will need to test this assertion, as will the Court here where Marsh has made the same contention.  (*See* Compl. ¶ 43 ("[I]t is impossible for Mr. Rice to perform his duties as CEO for CAC Specialty without violating the restrictive covenants in his employment Agreement . . . .").  Furthermore, Mr. Rice's Arbitration Demand requests a declaratory judgment stating that he has honored all of his obligations under both the Employment Agreement and the Separation Agreement.  (Rice Decl. ¶ 32).  The arbitrator thus will have to decide, like the Court here, what conduct is prohibited by the terms of Mr. Rice's Agreements, and whether Mr. Rice violated those terms by working for CAC Specialty.

Accordingly, allowing this case to go forward risks the arbitrator and the Court reaching conflicting determinations regarding the scope and interpretation of Mr. Rice's Agreements and whether Mr. Rice breached his contractual duties—issues central to Marsh's claims against CAC Specialty in this case.  To avoid such a result, this action should be stayed until the Marsh-Rice Arbitration has concluded.

II.   **THE ARBITRATOR'S DECISIONS WILL RESOLVE, OR HELP RESOLVE, MANY OF THE ISSUES RELEVANT TO THIS LITIGATION**

Courts also find stays of litigation to be appropriate when the outcome of a related arbitration will aid the court in resolving issues presented in the litigation or will have a preclusive effect on issues or claims in the litigation.  *See Cobra North America, LLC v. Cold Cut Sys. Svenska AB*, 639 F. Supp. 2d 1217, 1225 (D. Colo. 1998) (concluding that a stay was appropriate because the "arbitration decision will at the least inform or aid this court's consideration of the claims [plaintiff] asserts in this litigation against [defendant]"); *Brahma Grp., Inc. v. Ames Constr., Inc.*, 2015 WL 8308134, at *1 (D. Colo. Dec. 9, 2015) (recognizing that a "stay of a proceeding is appropriate when resolution of an arbitrable claim will have a preclusive effect on a nonarbitrable claim in the litigation") (citing *Chelsea Family Pharmacy, PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191, 1200 (10th Cir. 2009)).  Here, the resolution of the arbitration between Marsh and Mr. Rice will resolve, or help resolve, claims and issues to be decided in this case, which weighs strongly in favor of granting a stay.

As explained in the preceding section, the factual and legal issues presented here and in the Marsh-Rice Arbitration overlap significantly.  At a minimum, the arbitrator's interpretation of Mr. Rice's Employment and Separation Agreements, and determinations regarding whether he has complied with those Agreements, will aid the Court in resolving the claims asserted in this case which turn on the exact same issues.  *Harvest*, 2010 WL 1729805, at *1 (explaining that even where the arbitrator's decision "[would] not eliminate the potential for confusion or inconsistent results, it nonetheless may reduce it, since the arbitrator's decision could 'at least inform or aid this court's consideration of' the closely-related claims").  Indeed, even if the Court ultimately decides to grant Marsh's request for an injunction prohibiting violations of Mr.

11

Rice's Employment and Separation Agreements, the arbitrator's construction of those Agreements will aid the Court in crafting an order with the requisite level of specificity. Fed. R. Civ. P. 65(d); *Keyes v. School Dist. No. 1, Denver, Colo.*, 895 F.2d 659. 668 (10th Cir. 1990) ("[Rule 65] requires that an injunction be reasonably specific in identifying which acts are prohibited or required.").

The Marsh-Rice Arbitration may even conclusively resolve certain issues and claims in this litigation. Because Marsh is a party to both proceedings, any adverse determinations by an arbitrator would bind Marsh here. Under the doctrine of collateral estoppel (or "issue preclusion"), "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 (10th Cir. 1990) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (quotation marks omitted)). Under Colorado law, collateral estoppel applies not only to issues decided in an earlier lawsuit but also "precludes re-litigation of issues decided in arbitration." *Swan Global Investments, LLC v. Young*, 2019 WL 5095729, at *12 (D. Colo. Aug. 20, 2019) (citing *Guar. Nat'l Ins. Co. v. Williams*, 982 P.2d 306 (Colo. 1986); *Barnett v. Elite Props. Of Am.*, 252 P.3d 14, 22 (Colo. App. 2010)).

Here, the arbitrator will address questions identical to ones presented in this case, such as the proper interpretation of Mr. Rice's Employment and Separation Agreements, and there is no reason to doubt that Marsh will have an opportunity to fully and fairly litigate those issues in the arbitration. Any adverse determinations against Marsh will likely be binding on Marsh in this action and the claims and issues to be decided here may be significantly reduced. Accordingly, this is precisely the type of case in which a discretionary stay is appropriate.

### III.    A STAY WILL PROMOTE JUDICIAL ECONOMY

For largely the same reasons discussed in the preceding sections, allowing the Marsh-Rice Arbitration to go forward first will promote judicial economy which weighs further in favor of granting a discretionary stay.  *See Harwest*, 2010 WL 1729805, at *2.  This case in some ways resembles *Harwest*, where the plaintiffs sued two insurance companies for failing to provide coverage for defense costs incurred by the plaintiffs in three lawsuits.  *Id.* at *1.  After determining that the plaintiffs' claims against the first insurance company should be sent to arbitration, the court ordered that the plaintiffs' claims against the other insurance company should be stayed pending conclusion of the related arbitration.  *Id.* at *2.  In support of its decision the court noted that "judicial economy would be served" by a stay of the claims against the second insurance company.  *Id*.  It explained that regardless of whether the arbitrator's decision was binding as to the claims against the second insurance company, the arbitrator's decision "could help to focus the issues and assist this Court's consideration of those claims, resulting in more efficient litigation in this Court."  *Id.*

The same reasoning applies with equal force here.  The arbitrator's determinations could help inform or narrow the issues that the Court will need to consider, resulting in more efficient litigation.  For example, the arbitrator's conclusions regarding whether Mr. Rice violated his duties to JLT or the terms of his employment agreement could dispose of the question of whether CAC "interfered" with the contractual relationship or "aided and abetted" a breach of fiduciary duty by Mr. Rice.  It simply does not make sense for this Court to proceed with derivative claims against CAC until the primary claims, against Mr. Rice, have been resolved by the arbitral tribunal Marsh/JLT and Mr. Rice agreed should decide them.

## IV.  MARSH WILL NOT BE PREJUDICED BY A STAY

Marsh will not be unfairly prejudiced by a stay pending resolution of the arbitration between it and Mr. Rice.  Marsh, through its predecessor JLT Specialty, agreed to arbitrate all claims relating to Mr. Rice's Employment and Separation Agreements and cannot now complain about having to follow those procedures.  *See Cobra North America*, 639 F. Supp. 2d at 1226-27 (holding that party could not claim it was unfairly surprised by arbitration agreement of which it was aware); *United States ex rel. Frank M. Sheesley Co. v. St. Paul Fire and Marine Ins. Co.*, 239 F.R.D. 404, 415 (W.D. Pa. 2006) (rejecting argument that plaintiff would be prejudiced by a stay pending "the arbitration procedures that Plaintiff agreed to").  Moreover, a stay of this litigation may actually hasten, rather than delay, the resolution of Marsh's claims.  *See Frank M. Sheesley*, 239 F.R.D. at 415 (explaining that rather than causing a delay, "[c]ompelling the arbitration procedures that Plaintiff agreed to could have the opposite effect, since the 'policy favoring arbitration . . . [can] achieve the twin goals of . . . settling disputes efficiently and avoiding long and expensive litigation'").  As explained above, the arbitration will resolve many of the issues presented in this case, or will at least aid the Court in resolving such issues.  These time and cost saving benefits will inure to Marsh's benefit as well.  Marsh thus will not be prejudiced by a stay pending completion of the Marsh-Rice Arbitration.

## CONCLUSION

For the foregoing reasons, should any of Marsh's claims survive dismissal the Court should grant Defendant's motion and exercise its inherent authority to stay this action until the arbitration between Marsh and Mr. Rice has concluded.

### **D.C.COLO.LCivR 7.1(a) Certification**

On January 8, 2020, Defendant conferred with counsel for Marsh regarding the relief sought in this Motion.  Marsh opposes Defendant's request for a stay of these proceedings.

Dated: January 9, 2020

Respectfully submitted,

By: */s/ William M. Ojile, Jr.*
William M. Ojile, Jr.
Nicholas W. Dowd
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, CO 80237
Telephone: (720) 200-0676
Facsimile:   (720) 200-0679
Email:  bojile@armstrongteasdale.com
        ndowd@armstrongteasdale.com

Michael B. Slade
Mark W. Premo-Hopkins
Howard Kaplan
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Email:  mslade@kirkland.com
        mark.premohopkins@kirkland.com
        howard.kaplan@kirkland.com

*Counsel for Defendant*
*Cobbs Allen Capital, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2020, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ William M. Ojile, Jr.*
William M. Ojile, Jr.