**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| Marsh USA, Inc., | ) |
| *Plaintiff,* | ) |
| v. | ) Case No. 1:19-cv-03266-RM-STV |
| Cobbs Allen Capital, LLC, | ) |
| *Defendant.* | ) |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(B)(6)**

## INTRODUCTION

The generic legal conclusions in Marsh's complaint fail to state any claim against CAC. Marsh effectively concedes as much in its Response with repeated assertions about what facts it could have pled, but did not. The reality is that Marsh's complaint—the ***only*** document on which its claims can be judged at this stage—is an empty effort to stifle competition. Marsh claims that someone stole unidentified trade secrets, but does not identify who allegedly stole something, what was stolen, why it is a trade secret, how CAC used or disclosed it, or how such use or disclosure caused any harm. Marsh claims that some contracts were interfered with, but does not say which contracts, nor does it aver who did the interfering. In contrast, when Marsh filed suit against a different entity that its former employees left to join after its merger with JLT, Marsh knew it was obliged to include specific factual allegations and did so. Respectfully, this is simply not how the legal process works; parties filing a lawsuit must identify ***who*** did something wrong and ***what*** they supposedly did wrong rather than simply suing a competitor and repeating

over and over again that *someone* did something wrong.  The Court should dismiss Marsh's claims.

## FACTUAL BACKGROUND

The facts of this case are straightforward, and nothing alleged adds up to a viable claim. Marsh and the parent company of JLT Specialty merged in April 2019, eliminating JLT Specialty's market niche as a small specialty insurance broker.  (Compl. ¶ 11).  After the merger, a number of employees left or were pushed out of the newly formed Marsh-JLT, deciding to continue their careers at other brokers.  (*Id*.)  CAC, a specialty broker that had recently begun operations, was one of those brokers. (Compl. ¶ 35).  Since its creation, CAC has competed with Marsh, along with other entrenched insurance brokers, to gain business.  (Compl. ¶ 41).  Once the former JLT employees joined CAC, some former JLT clients decided to move their business to CAC, rather than continue having their accounts managed by the newly-merged company—and Marsh does not allege (nor could it allege) that any CAC employee actually solicited these clients.  (Compl. ¶¶ 41-43).  Marsh lashed out as a result, filing this lawsuit.

Beyond these basic facts, Marsh cannot contest two important truths about this case. First, *if* Marsh performed the forensic analysis of the kind stated in its complaint, (Compl. ¶ 38), and *if* it identified former employees removing its trade secrets, it would be able to say who took what documents, and when and how they were used.  Instead, Marsh has repeatedly declined to make concrete allegations—because there is nothing to allege.  While Marsh puffs its chest about a "forensic examination," a review of the complaint makes clear that Marsh *never even alleges that its forensic examination revealed that former JLT employees took any trade secrets*, instead merely alleging that the employees *accessed* undescribed "key Marsh files" and deleted "information." (Compl. ¶ 38).  Marsh's failure to plead any facts regarding *theft* or

*misappropriation* when (if they existed) it should easily be able to do so is damning. Marsh cites no case when a plaintiff was permitted to survive dismissal on such a thin complaint, and there is none.

Second, Marsh ignores that there are any number of innocent explanations for why clients may have left Marsh for CAC. Marsh does not and cannot dispute this. The JLT/Marsh merger had just occurred, and clients that did not work with Marsh previously would naturally look outside of Marsh for options. Marsh does not plead facts suggesting improper solicitation. These are precisely the type of allegations the Tenth Circuit had in mind when it said that "if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotation omitted).

## **ARGUMENT**

### I. MARSH CONCEDES THAT THE ALLEGATIONS *IN ITS COMPLAINT* ARE INSUFFICIENT BY RELYING ON ASSERTIONS *IT DID NOT PLEAD*.

Marsh knows its complaint is insufficient, thus when it drafted its Response to the Motion to Dismiss it changed its allegations in a failed (and irrelevant) attempt to make them stronger. The Court should ignore the new allegations. *See In re Qwest Communications Intern. Inc.*, 396 F. Supp. 2d 1178, 1188 (D. Colo. 2004) (ignoring additional allegations in responses to motion to dismiss). Here are a few examples of Marsh's attempts to alter the allegations from its complaint, among other, more subtle, retellings of Marsh's allegations in its Response:

- Marsh states in its brief that CAC was "working with [Andre Eichenholtz] to undermine Marsh prior to his departure from Marsh" but cites to paragraphs that contain no allegations about CAC whatsoever. (Resp. at 10).

- Marsh states in its brief that CAC "target[ed] specific Marsh/JLT employees with knowledge of unique, complex insurance arrangements with specific customers," but the paragraph of the Complaint that Marsh cites merely describes JLT's

3

business and says that former employees with knowledge of that business have left to join CAC.  (Resp. at 14 (citing Compl. ¶ 18)).

- Marsh states in its brief that CAC "never could have acquired customers so quickly (nor even known to pursue them in the first place)" without confidential information, an allegation not contained in the Complaint.  (Resp. at 14).

- The Complaint does not identify any "Marsh files" taken by any former JLT employees.  (Compl. ¶ 38).  Marsh's response brief claims that the former JLT employees took (still unidentified) "customer and prospective customer lists, and strategy and analysis relating to those customers."  (Resp. at 5, 14).

Instead of making the concrete allegations necessary to state a claim, Marsh repeatedly tells the Court about facts it *could* allege.  (Resp. at 6, 16).  That is not sufficient: "in the absence of specific factual averments" the complaint must be dismissed.  *See Ciena Commc'ns, Inc. v. Nachazel*, No. 09-cv-02845-MSK-MJW, 2010 WL 3489915, at *4-5 (D. Colo. Aug. 31, 2010).  In particular, Marsh repeatedly assures the Court that it could name the employees it accuses of taking trade secrets or what was stolen, but it declines to do either.  Instead, Marsh vaguely alludes to "approximately 30" former Marsh employees and suggests that CAC must know precisely which of those 30 employees allegedly misappropriated unidentified trade secrets simply because CAC now employs them.  (Resp. at 7).  And if it is Marsh's contention that each and every one of its former employees that joined CAC engaged in theft of trade secrets, the complaint is devoid of any factual support for such an incredible allegation.

Marsh also tries to shield the Court's eyes from the *McGriff* litigation, because the federal court's findings there undercut Marsh's allegations—even though the facts of that case are among the few Marsh actually offers in its complaint (albeit incorrectly).[1]  *McGriff Seibels &*

---

[1] CAC's motion to dismiss in no way depends on the Northern District of Alabama's findings in *McGriff*.  CAC referred to them because Marsh *explicitly relied on the allegations in that case in its Complaint.*  (Compl. ¶¶ 1, 31-32, 45).  Even if the Court were to ignore what actually happened in Alabama (which defies what Marsh pled in its Complaint), Marsh's complaint would still contain no specific factual allegations and should be dismissed on that basis.

4

*Williams, Inc. v. Sparks*, No. 2:19-cv-1196-ACA, 2019 WL 4600051 (N.D. Ala. Sept. 23, 2019). For purposes of this Motion to Dismiss, the only question is whether the few substantive *facts* (as opposed to legal conclusions) *pled in the complaint* state a claim *against CAC*.  They do not.

## II.   MARSH DOES NOT STATE A TRADE SECRET MISAPPROPRIATION CLAIM.

### A.   Trade Secret Law Does Not Allow Marsh's Claim.

Marsh has no trade secret claim, whether styled as an inevitable disclosure claim or otherwise.  While Marsh states at one point that it is not pursuing an inevitable disclosure theory, (Resp. at 12), it then goes on to argue at length that an inevitable disclosure claim is available.  (Resp. at 12-15).  Marsh is wrong.  No Colorado court has ever permitted a trade secret case to proceed on an inevitable disclosure theory and has rejected its application with facts like those here.  *Xantrex Tech. Inc. v. Advanced Energy Indus., Inc.*, No. 07-cv-02324-WYD-MEH, 2008 WL 2185882, at *19 (D. Colo. May 23, 2008) ("[F]or a party to make a claim of threatened misappropriation, whether a theory of inevitable disclosure or otherwise, the party must establish more than the existence of generalized trade secrets and competitor's employment of the party's former employee who has knowledge of trade secrets.")  Both the legislative history and statutory text of the DTSA confirm that it does not permit inevitable disclosure claims either.

Regardless, it would be illogical to apply inevitable disclosure here.  Inevitable disclosure is rarely used, but when it is used, it is to enjoin *individual employees* who take identical jobs at competitors from using trade secrets in their new job.  No court in any jurisdiction has ever permitted an inevitable disclosure claim (a) for damages, (b) against a former employee's *new employer*, (c) relying on an unnamed group of employees, and (d) months after they left the former employer.  *See Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 148 F. Supp. 2d 1326, 1335 (S.D. Fla. 2001) (noting that inevitable disclosure cases involve "an injunction to

5

prevent an employee from working for the former employer's competitor if the employer can demonstrate a real and present danger of disclosure"). The inevitable disclosure doctrine "treads an exceedingly narrow path through judicially disfavored territory" and should not be exponentially expanded to permit Marsh's claim. *See Janus et Cie v. Kahnke,* No. 12 Civ. 7201(WHP), 2013 WL 5405543, at *3 (S.D.N.Y. August 29, 2013) (citation omitted).

Indeed, Marsh's claim goes well beyond the concept of inevitable disclosure: it turns the employees themselves into the trade secrets, imposing liability on CAC merely for hiring them. Marsh's response terms its allegations against CAC as a "scheme to steal Marsh's employees and the information they possess." (Resp. at 10). *But Colorado law is clear that hiring employees cannot be misappropriation even if they possess trade secrets*. *See Ciena*, 2010 WL 3489915, at *4 ("Indeed, such an absolute rule—essentially imposing strict liability on a corporation that hires a person possessing others' trade secrets—is contrary to the very language of the Uniform Trade Secrets Act."). Because Marsh's complaint does not allege that *CAC* took any actions with respect to misappropriation beyond hiring employees, the trade secrets claims should be dismissed.

### B.     Marsh's Attempt to State an Intentional Misappropriation Claim Fails.

Marsh must put CAC on notice of its trade secret claims, but has failed to do so. *See Tennille v. Western Union Co.*, 751 F. Supp. 2d 1168, 1170 (D. Colo. 2010) (though detailed factual allegations are unnecessary a claim must still "give the defendant fair notice of what its claim is and the grounds upon which it rests"). *If* Marsh had a trade secrets claim to bring, this would not be difficult—if Marsh undertook the forensic analysis described in the complaint and found anything, it would have easily been able to include the allegations required.[2] Marsh

---

[2]  Marsh has demonstrated that it knows of this obligation and is capable of fulfilling it when there are specific factual allegations to allege. In a different, unrelated case filed against

argues that the Court should accept that because unidentified employees had *access* to information while at JLT/Marsh, those unidentified employees must have removed the confidential information from JLT/Marsh and used it at CAC, causing Marsh to lose business. There is no case supporting Marsh's logic. *See Ciena*, 2010 WL 3489915, at *4 (The plaintiff must "explain what specific facts have led [it] to the conclusion that [the defendant] has misappropriated or threatens to misappropriate the trade secrets.").

Marsh cannot and does not cite any case in which a plaintiff was permitted to assert a trade secret claim without even naming the person who supposedly took the trade secrets, let alone what the secrets are. Indeed, while Marsh offers conclusory assertions that its customer information is a trade secret, it never pleads that CAC employees took that information. (Compl. ¶¶ 16-18, 20-23). Instead, when it references its "forensic search" it states that the unknown employees took "key Marsh documents," without any indication of what those documents are. (Compl. ¶ 38).

Further, Marsh cannot identify any activity *by CAC* that permits an inference of anything beyond ordinary competition for business. *See Khalik*, 671 F.3d at 1191 (holding that complaint that sweeps in innocent activity failed to state a plausible claim). Marsh asks the Court to assume that because CAC hired former JLT employees and because Marsh has vaguely accused unidentified former JLT employees of leaving with unidentified information, CAC must have used that information to win over clients.[3] But that logic does not follow. *See, e.g., McGriff*,

---

former employees Marsh alleged (a) who took confidential information, (b) when they took it, (c) the file names of the information that was taken, and (d) how it was used by their new employer. *See* Complaint at *8-15, *JLT Specialty Ins. Servs., Inc. v. NFP Prop. & Casualty Servs., Inc.,* No. 1:19-cv-03921 (S.D.N.Y. May 1, 2019).

[3] Marsh again points the Court to the *McGriff* litigation, somehow in an effort to support its trade secret claim. (Resp. at 10). But the district court in *McGriff* determined that the

7

2019 WL 4600051, at *7 (describing CAC's solicitation of former McGriff client by employees who were not barred from contacting the client). There are numerous innocent reasons why Marsh's clients—who were recently forced to become Marsh's clients after it merged with JLT Specialty—would want to leave Marsh to become clients of CAC or another insurance brokerage.

Marsh ignores, as it must, *RE/MAX, LLC v. Quicken Loans, Inc.*, 295 F. Supp. 3d 1163, 1175 (D. Colo. 2018), which demonstrates that the inference Marsh must ask the Court to draw is unacceptable. In *RE/MAX*, Quicken Loans and RE/MAX had performed a joint venture together, giving RE/MAX access to Quicken Loans' confidential information. *Id*. at 1166. RE/MAX then launched a competitor to Quicken Loans' business, just one month after the venture ended. *Id*. at 1167. Mere access to confidential information and business motivations to use the information was not enough to infer that Quicken Loans stated a valid trade secret claim. The Court held that Quicken Loans' claims "lack any specific factual allegations of disclosure of trade secrets to Motto by RE/MAX's former employees and also lack any specific factual allegations of how such employees used Quicken Loans' trade secrets at Motto." *Id*. at 1175. "[W]ithout specific factual averments" of trade secret misappropriation, Quicken Loans could not state a claim. *Id*. at 1175 (internal quotation omitted). Marsh's allegations are even *thinner* than those in *RE/MAX*; Marsh thus cannot resist the same conclusion here.

### III. MARSH'S TORTIOUS INTERFERENCE CLAIM FAILS AS A MATTER OF LAW.

Marsh has not alleged that CAC took any action that qualifies under Colorado law as improper interference, a requirement to allege tortious interference. *See Ouedrago v. Downtown Denver Bus. Improvement Dist.*, No. 12-cv-01373-JLK, 2014 WL 559962, at *10 (D. Colo. Feb.

---

Plaintiff *could not state a valid trade secret claim*. *See* Memorandum and Opinion at *6-9. *McGriff*, No. 2:19-cv-1196-ACA (N.D. Ala. Jan. 23, 2020) (Dkt. No. 82). So too here.

8

13, 2014) (quoting *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp. 2d 1048, 1082 (D. Colo. 2004)). Improper interference requires "wrongful means," which "refers to conduct such as physical violence, fraud, civil suits, and criminal prosecutions." *See Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 623 (10th Cir. 1995). Though Marsh contends that its allegations of trade secret misappropriations suffice, they do not as a matter of law. *See Zimmer Spine, Inc. v. EBI, LLC*, No. 10-cv-03112-LTB-CBS, 2011 WL 4089535, at *7 (D. Colo. Sept. 14, 2011) (holding that trade secret misappropriation allegedly facilitating tortious interference was not itself "wrongful means"). As Colorado courts have recognized in similar situations, tortious interference claims must be dismissed when they contain no sufficient allegations of improper interference. *See Cunningham Lindsey U.S. Inc. v. Crawford & Co.*, No. 17-cv-03041-CMA-KLM, 2018 WL 6307865, at *1-4 (D. Colo. Dec. 3, 2018) (allegations that Defendant organized a mass resignation of Plaintiff's employees to eliminate Plaintiff from market did not state a claim for tortious interference).

Marsh has also failed to identify a specific contract that it alleges CAC interfered with or allege what provision of any contract was violated, as it must to state a valid tortious interference claim. *See Cunningham Lindsey*, 2018 WL 6307865, at *2-3. Marsh's attempt to distinguish *Cunningham Lindsey*'s facts cannot avoid this clear and simple requirement. Marsh makes excuses for not identifying the contracts (Resp. at 15-16), but the requirement is straightforward: identify the contracts with which CAC supposedly interfered. *Cunningham Lindsey*, 2018 WL 6307865, at *2-3. Marsh fails to do so, and this would be easy to do if Marsh actually had a claim. Because it refuses, the law compels dismissal of Marsh's tortious interference claim.

## IV. MARSH HAS NOT STATED A VALID CLAIM FOR AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY.

Finally, Marsh has failed to allege that a breach of fiduciary duty occurred, as it must to state a valid claim against CAC for aiding and abetting. *Colucci v. Nat'l Bd. of Chiropractic Examiners*, No. 18-cv-02085-CMA-STV, 2020 WL 364563, at *4 (D. Colo. Jan. 22, 2020) ("Aiding and abetting is a dependent claim; there can be no aiding and abetting claim where the underlying tort claim fails."). Again, Marsh points vaguely to an unknown number of unnamed employees who supposedly placed their loyalty in CAC while working for JLT/Marsh. (Compl. ¶ 77, 80-82). Though Marsh accuses CAC of burying its head in the sand, it is Marsh that ignores the facts: simply stating that some unidentified employees violated a fiduciary duty to Marsh, without even saying who they are, let alone what they did or how CAC aided and abetted them, does not state a claim. *See Mandelbaum v. Fiserv, Inc.*, 787 F. Supp. 2d 1226, 1242 (D. Colo. 2011) (dismissing claims of aiding and abetting breach of fiduciary duty when they are vague). Indeed, before the end of employment, employees have a right to prepare to compete and, Marsh has failed to include more than conclusory allegations that unidentified people improperly began to compete or failed to act for Marsh's benefit during their employment. *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 498 (Colo. 1989). Marsh does not even allege that the two employees identified in its complaint—Messers. Eichenholtz and Rice—violated any of their fiduciary duties. Marsh does not plead that either Mr. Rice or Mr. Eichenholtz solicited any Marsh client while employed by Marsh, as they must to state a fiduciary duty claim.

Regardless, the only act allegedly committed by CAC was when two *future* CAC employees set up a meeting in June 2019 that some Marsh employees (and some McGriff employees) attended. But CAC cannot have been a "knowing participant"—a required element

10

of this claim—because it is undisputed that it did not exist prior to August 2019. *See Holmes v. Young*, 885 P.2d 305, 308-09 (Colo. App. 1994) (requiring the plaintiff to show the defendant's "knowing participation in the breach" to state a claim for aiding and abetting a breach of fiduciary duty). Marsh attempts to plead CAC into existence earlier by alleging statements that Mr. Sparks and Mr. Rice supposedly made in May 2019. (Resp. at 19 n.3 (citing Compl. ¶ 46)). But, despite Marsh's reimagining of its complaint, the complaint contains no allegations that CAC had been formed or that Mr. Sparks and Mr. Rice were making statements on behalf of an entity that did not yet exist. A non-existent entity cannot knowingly participate in any act, including aiding and abetting a breach of fiduciary duties. *See Precision Fitness Equip. v. Nautilus, Inc.*, No. 08-cv-01228-CMA-KLM, 2009 WL 2169361, at *5 (D. Colo. July 20, 2009). Thus, Marsh's sole allegation to sustain its claim—that CAC hosted a meeting to discuss possible employment opportunities at a new firm—cannot bear the weight of Marsh's claim *even if* it could somehow show a breach of fiduciary duty. The aiding and abetting claim should be dismissed.

## CONCLUSION

For the forgoing reasons, and those included in its Motion to Dismiss, Defendant respectfully requests the Court to dismiss Marsh's Complaint pursuant to Federal Rule of Procedure 12(b)(6).

Dated: February 28, 2020                    Respectfully submitted,

                                            By: */s/ William M. Ojile, Jr.*
                                            William M. Ojile, Jr.
                                            Nicholas W. Dowd
                                            ARMSTRONG TEASDALE LLP
                                            4643 South Ulster Street, Suite 800
                                            Denver, CO 80237
                                            Telephone: (720) 200-0676
                                            Facsimile:   (720) 200-0679

11

              Email:  bojile@armstrongteasdale.com
                  ndowd@armstrongteasdale.com

              Michael B. Slade
              Mark W. Premo-Hopkins
              Howard Kaplan
              KIRKLAND & ELLIS LLP
              300 North LaSalle
              Chicago, IL 60654
              Telephone: (312) 862-2000
              Email:  mslade@kirkland.com
                  mark.premohopkins@kirkland.com
                  howard.kaplan@kirkland.com

              *Counsel for Defendant*
              *Cobbs Allen Capital, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2020, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ William M. Ojile, Jr.*
William M. Ojile, Jr.