## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. 1:19-cv-03266-RM-STV

MARSH USA INC., a Delaware corporation,

      Plaintiff,

v.

COBBS ALLEN CAPITAL, LLC, a Delaware limited liability company,

      Defendant.

---

## SCHEDULING ORDER

---

### 1. DATE OF CONFERENCE AND APPEARANCES OF COUNSEL
### AND PRO SE PARTIES

A telephonic scheduling conference was held on March 9, 2020 at 10:30 a.m. Plaintiff

Marsh USA Inc. was represented by Darren E. Nadel and Thomas W. Carroll of Littler

Mendelson. Defendant Cobbs Allen Capital, LLC was represented by William M. Ojile, Jr. and

Nicholas W. Dowd of Armstrong Teasdale LLP and Howard Kaplan of Kirkland & Ellis LLP.

The Parties will be represented in this case as follows:

**For Plaintiff:**

Darren E. Nadel
Thomas W. Carroll
Tommy Postek
Littler Mendelson, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO  80202
303-629-6200
303-629-0200 (f)
dnadel@littler.com
tcarroll@littler.com

tpostek@littler.com

Derek S. Hecht
Littler Mendelson, P.C.
2050 Main Street, Suite 900
Irvine, CA  92614
949-705-3000
949-724-1201 (f)
dhecht@littler.com


**For Defendant:**

Howard M. Kaplan
Mark William Premo-Hopkins
Michael Slade
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312-862-3807
312-862-2200 (f)
howard.kaplan@kirkland.com
mark.premohopkins@kirkland.com
mslade@kirkland.com

Nicholas William Dowd
William M. Ojile, Jr.
Armstrong Teasdale LLP
4643 South Ulster Street, Suite 800
Denver, CO 80237
303-575-4003
720-200-0679
ndowd@armstrongteasdale.com
bojile@armstrongteasdale.com


## 2. STATEMENT OF JURISDICTION

The Court has original jurisdiction over this matter under the federal Defend Trade

Secrets Act, 18 U.S.C. § 1836(c), and supplemental jurisdiction over Marsh's state-law claims

under 28 U.S.C. § 1367.

## 3. STATEMENT OF CLAIMS AND DEFENSES

a.       **Plaintiff:** Defendant has engaged in a wrongful scheme to disrupt Marsh's business by unlawfully hiring approximately 30 of Marsh's employees, encouraging and inducing them to leave Marsh and take Marsh's trade secrets, clients, and coworkers with them, and assisting these employees in recruiting each other to leave Marsh in violation of their restrictive-covenant agreements and in violation of their duties of loyalty/fiduciary duties. Based on similar litigation pending against Defendant, and prior suits against Defendant, it appears that Defendant has a pattern and practice of conducting similar schemes against its competitors.

Marsh is a global leader in insurance broking and risk management. In April 2019, Marsh spent a significant amount of time and resources acquiring Jardine Lloyd Thompson Group plc ("JLT"). JLT is an important partner for Marsh because JLT is a specialty broker with experience negotiating unique insurance contracts with unique pricing, structures, and provisions. JLT was able to negotiate such contracts because it maintained detailed, and confidential and proprietary, information about its clients and potential clients, including information about their needs, preferences, and willingness to structure insurance policies in certain ways. That information was a highly valuable trade secret of Marsh following its acquisition of JLT. In addition, Marsh maintains other confidential and trade secret information that was misappropriated by CAC Specialty, including client and prospective client lists and contact information, as well as strategies and analysis related to those clients/prospective clients.

However, this knowledge also made JLT's employees (who became Marsh employees following the acquisition of JLT by Marsh), targets for CAC Specialty. CAC Specialty, as they have done to other companies, set out to destroy Marsh's business and steal Marsh's confidential

and proprietary information by illegally luring those employees away, and encouraging them to take Marsh's confidential and proprietary business with them. CAC Specialty did just that, and the employees that joined CAC Specialty are using Marsh's confidential and proprietary information to solicit and steal Marsh's clients, to the detriment of Marsh.

They did this in a variety of ways. For example, CAC Specialty has already admitted, in a similar lawsuit brought by McGriff Seibels & Williams, Inc. in Alabama, that it arranged and paid for a meeting in Denver in June 2019 for high-level McGriff and JLT Specialty employees, the purpose of which was for those employees to solicit each other to leave their current employment and join CAC Specialty, in violation of their contractual agreements with Marsh. CAC Specialty's plan worked, and roughly 30 Marsh employees have left Marsh for CAC Specialty, often resigning on the same day or within days of each other.

Further, CAC Specialty permitted and encouraged these employees to take Marsh's confidential and proprietary information with them to CAC Specialty. Marsh has performed a forensic analysis on the computers of the departing employees, and reviewed their email communications in the months leading up to their departures. The results are disturbing. Many of the departing employees displayed similar patterns of wrongdoing, including the suspicious access of confidential and proprietary Marsh documents in the days leading up to their last day of work (and which they would have no business reason to access), the use of USB devices to apparently transfer information out of Marsh's control, and the deletion of important files to cover their tracks and disrupt Marsh's business.

The departing employees' use of Marsh's information, and violation of their restrictive covenants with Marsh/JLT, in their new roles at CAC Specialty is also evident. For example,

Mike Rice was the former CEO of JLT Specialty. In that position, he had supervisory authority and responsibility over all contracts and client relationships maintained by JLT. He then left JLT to become CEO of CAC Specialty. Subsequently, Marsh has received a number of Broker of Record letters which Marsh receives whenever a client moves its business to a new broker. Those forms indicate that many of Mr. Rice's former accounts are moving to CAC Specialty. Among these accounts are accounts which used unique structures and provisions developed by JLT's employees for JLT. Notably, CAC Specialty admitted that it had been in discussions with Mr. Rice for months before he officially left JLT Specialty, and CAC Specialty's chairman, Paul Sparks, accidentally revealed that Mr. Rice had been working with CAC Specialty for months while he was still a JLT Specialty employee. Mr. Rice, of course, never disclosed this to JLT or Marsh, and instead falsely signed a separation agreement promising that he would honor his contractual duties and duty of loyalty to Marsh when in fact he was actively violating those duties. Based on the timing of the departure of other Marsh employees in 2019, it seems that part of Mr. Rice's cooperation with CAC Specialty involved selecting and soliciting key JLT/Marsh employees to leave and join CAC Specialty.

Accordingly, Marsh brings this action for (1) violation of the Defend Trade Secrets Act; (2) violation of Colorado's Uniform Trade Secrets Act; (3) interference with contractual relations; and (4) aiding and abetting breaches of the duty of loyalty and fiduciary obligations. Marsh seeks injunctive relief, damages, and all other appropriate relief to stop Defendant's wrongful actions.

b.      **Defendant:**  CAC denies the allegations in the Complaint.  Marsh USA's merger with JLT Specialty resulted in many former JLT employees deciding to leave the newly-formed

entity, Marsh-JLT Specialty, for a variety of reasons, including that they did not want to work at

Marsh.  These employees did not have non-compete agreements and they were free to leave and

to continue their careers in the insurance industry elsewhere.  Former JLT employees left Marsh

for a variety of different places, one of which was CAC.

CAC's decision to hire former JLT Specialty employees was absolutely lawful, and

Marsh's threadbare complaint is nothing but an effort to deter employees from leaving Marsh

and to avoid fair competition in the marketplace.  The claims against CAC have absolutely no

merit.  CAC has tried to ensure that all of its employees comply with any restrictive covenants or

duties that they owe to former employers, and has no reason to believe that anything was stolen

from Marsh (or used by CAC) or that any business was improperly solicited.  That is presumably

why Marsh has, thus far, been unable to identify any particular act of misconduct beyond vague,

general assertions that former employees (who go mostly unnamed) have violated unspecified

restrictive covenants and misappropriated unspecified information.  Absent an ability to

substantiate its accusations of misconduct by former employees--which Marsh has simply

refused to do--Marsh's wholly derivative claims against CAC fail.  CAC will be in a position to

investigate and respond to any actual allegations of substantive misconduct if and when they are

made.

The only conduct challenged by Marsh thus far has been that of Michael Rice.  CAC has

not permitted Mr. Rice to solicit *any* JLT or Marsh client and has no reason to believe that he has

done so.  Moreover, Marsh's suggestion that Mr. Rice was performing services for CAC while

still employed by Marsh is completely baseless.  In any event, Marsh's disputes with Mr. Rice

are being arbitrated and CAC anticipates that all such claims will be decided in Mr. Rice's favor

6

at arbitration, which will bar and moot Marsh's claims against CAC here.

## 4. UNDISPUTED FACTS

The parties will attempt to agree on a set of stipulated undisputed facts prior to submission of dispositive motions.

## 5. COMPUTATION OF DAMAGES

a.      **Plaintiff:** The following is Marsh's preliminary description of the damages it seeks against Defendant (in addition to injunctive relief). In connection with its claims for misappropriation of its information, Plaintiff seeks (separately for each item of information misappropriated): the greater of: (a) its lost profits, (b) Defendants profits associated with its use of Plaintiff's information, or (c) the reasonable license value of the information.

Plaintiff also seeks the greater of (a) its lost profits or (b) Defendants profits associated with each employee unlawfully hired by Defendants and each customer obtained by Defendant.

Plaintiff also seeks recruiting costs and training costs associated with each lost employee.

Plaintiff also seeks attorneys' fees, costs, and interest.

Plaintiff will provide an appropriate disclosure after it has retained an expert to compute Plaintiff's damages.

b.      **Defendant:**  Defendant has moved to dismiss the complaint and has not yet answered or had the opportunity to assert counterclaims or assess what damages it will seek. Defendant will be seeking, at a minimum, its attorney's fees and costs from Plaintiff.

## 6. REPORT OF PRECONFERENCE DISCOVERY &
## MEETING UNDER FED. R. CIV. P. 26(f)

**a.      Date of Rule 26(f) meeting.**

The Fed. R. Civ. P. 26(f) meeting was held on January 10, 2020 at 11:00 a.m.

**b.      Names of each participant and party he/she represented.**

The following counsel participated in the meeting: Darren E. Nadel, Thomas W. Carroll,

Derek S. Hecht, and Tommy Postek represented Plaintiff. William M. Ojile, Jr., Howard Kaplan,

and Nicholas W. Dowd represented Defendant.

**c.      Statement as to when Rule 26(a)(1) disclosures were made or will be made.**

The Parties will exchange written Rule 26(a) disclosures by March 23, 2020.

**d.      Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).**

The Parties agreed to exchange written Rule 26(a) disclosures by March 23, 2020.

**e.      Statement concerning any agreements to conduct informal discovery:**

The Parties have not reached any agreements concerning informal discovery.

**f.      Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.**

(1) The Parties will use a unified exhibit number system.

(2) Plaintiff proposes that the Parties agree to cooperate with each other for the purposes

of obtaining and using discovery exchanged in the United States District Court Northern District

of Alabama case *McGriff, Seibels & Williams, Inc. v. Paul Sparks, et al*. (Case No. 2:19-cv-1196-

ACA), as well as in the arbitrations between Marsh and individuals who are now employees of

Cobbs Allen. Plaintiff proposes that, as with all discovery, the Parties will only seek information

8

exchanged in those other disputes to the extent the information (if any) is within the scope of discovery in this litigation.

Defendant will cooperate with Plaintiff on all discovery, including with respect to exchanging discovery exchanged in the *McGriff* litigation to the extent relevant to the issues in this case.  Defendant notes that it is not a party to any of the pending arbitrations, and none of the individuals are named as parties in this lawsuit (at least yet), so it is unclear what Marsh is proposing with respect to the arbitrations initiated by certain Cobbs Allen employees against Marsh and certain affiliates.  That said, Defendant will certainly work cooperatively with Plaintiff in an effort to reduce discovery costs.

g.       **Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.**

**Plaintiff's statement:** Plaintiff anticipates that extensive discovery of electronically stored information ("ESI") will be needed, including capture and recovery of historical emails and data regarding communications via text/instant messaging applications and social media postings. Plaintiff proposes that as a presumption of the standard production format, the Parties supply ESI in a TIFF plus load file format that includes static images, searchable extracted text, and associated metadata, unless otherwise requested or as specified by the following exceptions:

(1) All documents which utilize Microsoft Office are to be produced in their native

format rather than in .pdf format.

**Defendant's Statement:** Defendant anticipates that discovery of electronically stored information ("ESI") will be needed. Defendant proposes that as a presumption of the standard

production format, the Parties supply ESI in a TIFF plus load file format that includes static

images, searchable extracted text, and associated metadata, unless otherwise requested or agreed.

Defendant notes that it is engaging a vendor to help with the production of ESI and will be in a

better position to discuss production format with Plaintiff after completing that process.

> **h.** **Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.**

The Parties have discussed the topic of settlement.  Defendant is interested in early

mediation in an effort to avoid the expenditure of costs and attorneys' fees.  To date, Plaintiff has

declined Defendant's suggestion of mediation.  Plaintiff believes that settlement discussions will

be more fruitful after some discovery has taken place.

## 7. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

> **a.** **Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.**

**Plaintiff Proposes:**

The parties shall be limited to conduct no more than 30 depositions, and serve no more

than 50 interrogatories without leave of the court or stipulation of the other party. Plaintiff

believes that the presumptive limits should be increased due to the number of individual

employees involved in Defendant's scheme to take Plaintiff's employees, trade secrets,

confidential information, and customers.

**Defendant Proposes:**

The presumptive limits under the Federal Rules of Civil Procedure for depositions and interrogatories are sufficient for this case.  Defendant believes that the parties should be limited to conduct no more than 10 depositions and serve no more than 25 interrogatories each, absent good cause shown, with the parties to meet and confer and discuss the need for additional depositions or interrogatories prior to bringing any disputes to the Court.  Defendant notes that Plaintiff has only listed four people below as those it presently anticipates deposing, as well as "several" unidentified CAC employees.

Defendant will meet and confer with Plaintiff about whether additional depositions are appropriate if Plaintiff identifies who the people at CAC that Plaintiff believes misappropriated trade secrets are, what the alleged trade secrets were, who allegedly interfered with contracts, and what they were.  Prior to Plaintiff providing any such information, Defendant is unable to agree to Plaintiffs' demand that it be permitted to depose 30 people, which would comprise nearly every single employee that left JLT or Marsh for CAC.  Defendant believes that such an approach would impose unreasonable expense and burden on Defendant and would not be proportional to the needs of this case.

**b.      Limitations which any party proposes on the length of depositions.**

**Plaintiff Proposes:**

Plaintiff requests more than seven hours in total for the 30(b)(6) deposition. Specifically, Plaintiff requests a 30(b)(6) deposition of no more than 2 hours to cover topics related to Defendants efforts to preserve information related to this litigation and related to how Defendant and its employees store information used in Defendant's business. Plaintiff requests an additional

7 hours of deposition time to cover substantive topics related to the allegations in the Complaint.
Finally, Plaintiff proposes that the 2-hour deposition take place in the next month, but that the 7-hour deposition take place after the Parties have exchanged written discovery.

**Defendant Proposes:**

Defendant proposes that the length of all depositions be limited to one day of seven hours
unless specifically extended by Order of the court or by agreement of the parties.  As far as
information on preservation and storage, Defendant is willing to meet and confer with Plaintiff
and to voluntarily provide information on how CAC stores information and on CAC's document
preservation (provided that Marsh does the same) within the next 30 days, and if Plaintiff has
follow-up questions they can raise those with counsel or (if necessary) as a Rule 30(b)(6) topic.

    c.       **Limitations which any party proposes on the number of requests for production and/or requests for admission.**

**Plaintiff Proposes:**

The Parties shall be limited to 50 requests for production and 50 requests for admissions.
Plaintiff believes that the presumptive limits should be increased due to the number of individual
employees involved in Defendant's scheme to take Plaintiff's employees, trade secrets,
confidential information, and clients.

**Defendant Proposes:**

The Parties shall be limited to 30 requests for production of documents and 25 requests
for admissions.

**d.** **Other Planning or Discovery Orders**

The Parties anticipate filing a proposed Protective Order by March 23, 2020.  Plaintiff

also anticipating filing a proposed forensic protocol.  Defendant is willing to meet and confer

with Plaintiff on the need for and content of a forensic protocol.

## 9. CASE PLAN AND SCHEDULE

The parties do not agree on a case plan and schedule.  The parties' proposals are as

follows:

| Deadline | Plaintiffs' Proposal | Defendant's Proposal |
|---|---|---|
| Deadline for Joinder of Parties | July 10, 2020 | May 1, 2020 |
| Discovery Cutoff | January 15, 2021 | November 13, 2020 |
| Dispositive Motions | March 26, 2021 | December 4, 2020 |

a.      Expert Witness Disclosures:

**1.** **Anticipated fields of expert testimony:**

The Parties shall identify anticipated fields of expert testimony, if any.

Plaintiff's Statement as to Experts: Plaintiff anticipates retaining expert witnesses

concerning damages and concerning the nature and existence of its trade secrets.

Defendant's Statement as to Experts: Defendant anticipates retaining expert witnesses

relating to the alleged trade secrets (thus far unidentified).  Defendant may also, depending on

the facts ultimately alleged (if any) retain experts on computer forensics, industry practices for

employee and client interaction, and damages.

**2.** **Limitations which the parties propose on the use or number of expert witnesses.**

Plaintiff proposes a limit of four retained experts per side, not including rebuttal experts. Plaintiff also proposes rebuttal-expert limitations of one rebuttal expert to each affirmative expert. Defendant does not presently anticipate needing more than four experts but does not know given the lack of information provided by Plaintiff thus far about its allegations.  Thus Defendant would be fine with that limit, subject to a good cause exception.

3.      The Parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before:

**Plaintiff proposes: Friday, October 9, 2020.**

**Defendant proposes: Monday, August 31, 2020.**

4.      The Parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before:

**Plaintiff proposes: Friday, November 13, 2020.**

**Defendant proposes: Wednesday, September 30, 2020.**

Notwithstanding the provisions of Fed. R. Civ. P. 26(a)(2)(B), no exception to the requirements of the rule will be allowed by stipulation unless the stipulation is in writing and approved by the court. In addition to the requirements set forth in Rule 26(a)(2)(B)(I)-(vi), the expert's written report also must identify the principles and methods on which the expert relied in support of his/her opinions and describe how the expert applied those principles and methods reliably to the facts of the case relevant to the opinions set forth in the written report.

e. **Identification of Persons to Be Deposed:**

Preliminary List of Plaintiff's Depositions:

| *Name of Deponent* | *Expected Length of Deposition* |
|---|---|
| Bruce Denson | 7 hours |
| Paul Sparks | 7 hours |
| Mike Rice | 7 hours |
| Cobbs Allen | 9 hours (see section 8.b. above) |
| Several individual ex-employees | Ranging from 2 hours to 7 hours |

Preliminary Draft List of Defendant's Potential Depositions:

| *Name of Deponent* | *Expected Length of Deposition* |
|---|---|
| Patrick Donnelly | 7 hours |
| Dominic Burke | 7 hours |
| John Doyle | 7 hours |
| Martin South | 7 hours |
| Dan Glaser | 7 hours |
| Steve Shappel | 7 hours |
| Representative of Marsh USA, Inc. | 7 hours |

f. **Deadline for Interrogatories:** Interrogatories must be served on the opposing party no later than **60 days before the discovery cutoff date**. Responses to the same are due as required by Fed. R. Civ. P. 6(d) and 33(b)(2).

g. **Deadline for Requests for Production of Documents and/or Admissions:** Requests for Production of Documents and Requests for Admissions must be served on the opposing party no later than **60 days before the discovery cutoff date**. Responses to the same are due as required by Fed. R. Civ. P. 6(a) and 34(b)(2).

## 10. DATES FOR FURTHER CONFERENCES

a. Status conferences will be held in this case at the following dates and times:

b.      A final pretrial conference will be held in this case on _____at o'clock

_____m. A Final Pretrial Order shall be prepared by the Parties and submitted to the court no later

than seven (7) days before the final pretrial conference.

## 11. OTHER SCHEDULING MATTERS

**a.      Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.**

None except as specifically noted above where separate positions are stated for Plaintiff

and Defendant.

b.      Plaintiff anticipates a four-week trial. Defendant is not yet in a position to

estimate the length of trial given the lack of information provided by Plaintiff, but believes that

any trial would be substantially shorter than four weeks.

c.      Defendant has not yet filed an answer and, therefore, the deadline to request a jury

has not yet arisen.  However, Plaintiff anticipates requesting a jury trial.  Defendant anticipates

doing the same.

c.      There are no pretrial proceedings that the Parties believe may be more efficiently

or economically conducted in any of the District Court's facilities outside of Denver, Colorado.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with

D.C.COLO.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon the

moving attorney's client, all attorneys of record, and all *pro se* parties.

16

Counsel will be expected to be familiar and to comply with the Pretrial and Trial

Procedures or Practice Standards established by the judicial officer presiding over the trial of this

case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information

must be reported and filed with the Court pursuant to the applicable local rule.

### 13. AMENDMENTS TO SCHEDULING ORDER

The Scheduling Order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this ___ day of _____, 2020.

BY THE COURT:

_____

United States Magistrate Judge

**APPROVED:**

| For Plaintiff: | For Defendant: |
|---|---|

*s/ Thomas W. Carroll*_____   *s/ Nicolas William Dowd*_____ _____

| For Plaintiff: | For Defendant: |
|---|---|
| Darren E. Nadel | Howard M. Kaplan |
| Thomas W. Carroll | Mark William Premo-Hopkins |
| Tommy Postek | Michael Slade |
| Littler Mendelson, P.C. | Kirkland & Ellis LLP |
| 1900 Sixteenth Street, Suite 800 | 300 North LaSalle Street |
| Denver, CO  80202 | Chicago, IL 60654 |
| 303-629-6200 | 312-862-3807 |
| 303-629-0200 (f) | 312-862-2200 (f) |
| dnadel@littler.com | howard.kaplan@kirkland.com |
| tcarroll@littler.com | mark.premohopkins@kirkland.com |
| tpostek@littler.com | mslade@kirkland.com |
|  |  |
| Derek S. Hecht | Nicholas William Dowd |
| Littler Mendelson, P.C. | William M. Ojile, Jr. |
| 2050 Main Street, Suite 900 | Armstrong Teasdale LLP |
| Irvine, CA  92614 | 4643 South Ulster Street, Suite 800 |
| 949-705-3000 | Denver, CO 80237 |
| 949-724-1201 (f) | 303-575-4003 |
| dhecht@littler.com | 720-200-0679 |
|  | ndowd@armstrongteasdale.com |
|  | bojile@armstrongteasdale.com |

4821-9293-4576.10 059121.1119

18