## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03266-RM-STV

MARSH USA, INC.,

    Plaintiff,

v.

COBBS ALLEN CAPITAL, LLC and
COBBS ALLEN & HALL, INC.,

    Defendants.
___

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
___

Magistrate Judge Scott T. Varholak

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) (the "Motion") [#64], which has been referred to this Court [#67]. The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Court respectfully **RECOMMENDS** that the Motion be **DENIED.**

**I.   BACKGROUND**[1]

Plaintiff Marsh USA, Inc. ("Marsh") is a global insurance broking and risk management company. [#62 at ¶ 13] In April 2019, Plaintiff's parent company, Marsh

---

[1] The facts are drawn from the allegations in Plaintiff's First Amended Complaint [#62], which must be taken as true when considering the Motion. *See Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

& McLennan Companies, Inc., acquired Jardine Lloyd Thompson Group plc, resulting in the acquisition of JLT Specialty USA. [*Id.* at ¶ 14] Defendant Cobbs Allen Capital ("CAC") formed in July 2019 and entered the insurance market; Defendant Cobbs Allen & Hall, Inc. ("CAH") is an affiliate of CAC providing administrative services. [*Id.* at ¶¶ 5-7] The instant action arises from Defendant CAC's employment of former JLT Specialty employees and Plaintiff's allegation that those employees and CAC misappropriated Plaintiff's trade secrets. [*See generally* #64]

Plaintiff maintains trade secret information as part of its operations, including: "unique insurance strategies, preferences, and requirements" for prospective and current clients; "insurance contracts and riders with unique pricing, structures, and provisions"; strategic analysis on specific clients; proposed terms for future renewals; and current and prospective customer lists, including information regarding decisionmakers. [*Id.* at ¶¶ 17-19, 21-22] This information is not generally known to the public and could be used by competitors to bid against Plaintiff and obtain clients. [*Id.* at ¶ 20] Plaintiff maintains this information on secured systems. [*Id.*] Plaintiff additionally requires employees to sign confidentiality agreements prohibiting the use or disclosure of Plaintiff's trade secrets or other information during employment and after termination of employment. [*Id.* at ¶ 15] These agreements also require employees to return Plaintiff's information upon termination and restrict former employees from soliciting Plaintiff's clients, prospective clients, or employees. [*Id.*]

In June 2019, Defendant CAC arranged meetings with JLT Specialty employees and employees from similar firms with the purpose of recruiting them to join Defendant CAC. [*Id.* at ¶ 37] CAC employee Bruce Denson attended these meetings and has

2

stated[2] that individuals he was recruiting to join CAC provided information about clients and revenue, which Denson used to plan CAC's launch and secure funding. [*Id.* at ¶¶ 38, 47] Five JLT employees attended these meetings. [*Id.* at ¶ 4] In the months after the meetings, 39 JLT and Marsh employees resigned employment with Plaintiff and were hired by Defendant CAC. [*Id.* at ¶ 41] Many of these employees resigned within several days of each other. [*Id.*]

Plaintiff conducted forensic analysis of departing employees' computers, which revealed that many were in close contact with each other and Defendants about their departure and that they intended to disrupt Plaintiff's business. [*Id.*] Plaintiff also found that "numerous employees access[ed] key Marsh files just before their departures and [used] USB devices to apparently transfer Marsh information off Marsh's systems." [*Id.* at ¶ 48] Among the information accessed were trade secrets concerning Plaintiff's clients, including clients that subsequently transferred business to Defendant CAC. [*Id.* at ¶ 49] The employees had no legitimate business reason to access the files and "in some cases apparently had not accessed data on those clients for months." [*Id.*]

Plaintiff documented at least 14 instances of employees using USB devices to access and transfer proprietary documents during their final days of employment with Plaintiff. [*Id.* at ¶¶ 50-66] These employees accessed large numbers of files, including files for clients who later transferred business to Defendant CAC. [*Id.*] For example, on July 18, 2019, the day after receiving a job offer from Defendant CAC, Jaclyn Kroupa accessed 149 documents in a 17-minute period while utilizing a USB device. [*Id.* at ¶

---

[2] Alabama company McGriff Seibels & Williams, Inc. ("McGriff") filed a misappropriation of trade secrets lawsuit against CAC, making allegations similar to Plaintiff's. [#62 at ¶ 36] Bruce Denson gave sworn testimony in that lawsuit regarding the Denver 2019 meetings and his recruiting efforts. [*Id.* at ¶ 37]

63] The documents she accessed included policies, RFP responses, renewal-strategy documents, and other client documents. [*Id*.] In another example, Janet Medrano sent documents to Corey Robison's personal email account on both employees' last day with Plaintiff before beginning employment for Defendant CAC. [*Id*. at ¶ 66] The documents related to the account and policies of a client who subsequently moved to CAC. [*Id*.] In total, 34 of Plaintiff's clients moved business to Defendant CAC. [*Id*. at ¶ 69] While still with Plaintiff, each of those 34 clients was served by at least one employee who subsequently transferred to CAC. [*Id*. at ¶¶ 42, 70-103].

Plaintiff initiated the instant action on November 18, 2019 [#1] and filed a First Amended Complaint on May 28, 2020 [#62]. The First Amended Complaint alleges two causes of action against solely Defendant CAC: (1) misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and (2) misappropriation of trade secrets under the Colorado Uniform Trade Secret Act ("CUTSA"), Colo. Rev. Stat. § 7-74-101. [*Id*. at ¶¶ 26-29] It additionally alleges two causes of action against both Defendants: (1) interference with contractual relations and (2) aiding and abetting breaches of the duty of loyalty and fiduciary duties. [*Id*. at ¶¶ 29-31] Plaintiff seeks monetary damages, equitable relief, and attorneys' fees. [*Id*. at ¶¶ 31-32]

On June 11, 2020, Defendants filed the instant Motion, arguing that Plaintiff's First Amended Complaint should be dismissed in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). [*See generally* #64]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir.2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir.2003)). When reviewing a facial attack on subject matter jurisdiction, the Court "presume[s] all of the allegations contained in the amended complaint to be true." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."

5

*Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

III. **ANALYSIS**

Defendants first seek dismissal of Plaintiff's misappropriation of trade secrets claims against Defendant CAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). [#64 at 10-21] To the extent that the federal misappropriation claim is dismissed, Defendants argue that this Court should decline to exercise

supplemental jurisdiction over Plaintiff's state law claims. [*Id.* at 21-22] The Court addresses each of these arguments in turn.

### A. Misappropriation of Trade Secrets

Defendants contend that they are entitled to dismissal of Plaintiff's claim for misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA") and the Colorado Uniform Trade Secrets Act ("CUTSA"). [#64 at 6] A plaintiff asserting a DTSA claim must establish: "(1) the existence of a trade secret that relates to a product or service used in, or intended for use in, interstate or foreign commerce; (2) the acquisition of the trade secret, or the use or disclosure of the trade secret without consent; and (3) the person acquiring, using, or disclosing the trade secret knew or had reason to know that the trade secret was acquired by improper means." *DTC Energy Group, Inc. v. Hirschfeld*, 420 F.Supp.3d 1163, 1175 (D. Colo. 2019) (quoting *Arctic Energy Servs., LLC v. Neal*, No. 18-cv-00108-PAB-KLM, 2018 WL 1010939, at *2 (D. Colo. Feb. 22, 2018)); *see also* 18 U.S.C. § 1836(b)(1); 18 U.S.C. § 1839. Similarly, under CUTSA a plaintiff must establish: "[1] that he or she possessed a valid trade secret, [2] that the trade secret was disclosed or used without consent, and [3] that the defendant knew, or should have known, that the trade secret was acquired by improper means." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993). The Court addresses each requirement below.

#### i. Existence of Trade Secrets

The DTSA defines the term "trade secret" "broadly to include 'all forms and types of financial, business, scientific, technical, economic, or engineering information' so long as 'the owner thereof has taken reasonable measures to keep such information secret'

7

and 'the information derives independent economic value, actual or potential, from not being generally known to,' or ascertainable by, another person." *Arctic Energy*, 2018 WL 1010939, at *2 (quoting 18 U.S.C. § 1839(3)).  CUTSA provides a similar definition.[3]

The Amended Complaint states that Plaintiff maintains trade secrets—such as unique insurance strategies; strategic analysis of specific clients; proposed terms for future renewals; and current and prospective customer lists—which are not generally known to the public and could be used by competitors to bid against Plaintiff and obtain clients.  [#62 at ¶¶ 18-22]  It additionally states that Plaintiff protects this information through storage on secured servers and the use of employee confidentiality agreements.  [*Id.* at ¶¶ 15, 20]  Plaintiff thus sufficiently alleges that it maintains secret, economically valuable business information of the type protected by trade secret laws.

Although the Amended Complaint does not name each specific trade secret document at issue, "cases rejecting trade secret claims for lack of specificity are predominantly at later stages in the litigation process."  *SBM Site Servs., LLC v. Garrett*, No. 10-CV-00385-WJM-BNB, 2012 WL 628619, at *10 (D. Colo. Feb. 27, 2012).  Moreover, courts only dismiss a trade secret claim "for lack of specificity on the pleadings in the most extreme cases."  *Id.* (citing *Thermal Zone Products Corp. v. Echo Eng., Ltd.*, No. 93 C 0556, 1993 WL 358148, at *5-6 (N.D. Ill. Sept. 14, 1993) (dismissing complaint that merely recited statutory language)).  Indeed, courts in this

---

[3] CUTSA defines a trade secret as "the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value."  Colo. Rev. Stat. § 7-74-102(4).  "To be a 'trade secret' the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes."  *Id.*

8

district have determined that identifying specific documents and categories of documents—without listing the computer file names—satisfies the notice pleading requirement in Federal Rule of Civil Procedure 8. *See Id.* (finding plaintiff's identification of documents such as strategic plans, historical bid information, and customer-specific sales power points sufficient to withstand dismissal). Thus, for the purpose of stating a misappropriation claim, Plaintiff sufficiently identifies allegedly misappropriated trade secret documents and categories of information.[4] [*See* #62 at ¶¶ 15, 17-19, 21-22]

### ii. Improper Acquisition, Use, or Disclosure

Additionally, the Court finds that Plaintiff sufficiently alleged that its trade secret information was acquired through improper means by former employees. Under both CUTSA and the DTSA, "improper means" is defined to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A); C.R.S. § 7-74-102(1). Employee removal of company information by email, personal device, or maintenance of company property upon termination of employment is recognized as a form of improper acquisition. *See e.g., SBM Site Servs.,* 2012 WL 628619, at *3, *10 (finding allegations survived dismissal where employee emailed information to personal

---

[4] The Court is familiar with the discovery disputes related to this matter and to Defendants' contention that Plaintiff continues to refuse to provide the names of each specific document accessed. [*See* #64 at 11, 19 n.3]. However, in determining whether Plaintiff has sufficiently alleged a misappropriation claim, "[t]he Court must limit its consideration to the four corners of the Amended Complaint [and] any documents attached thereto . . . ." *Ciena Comm. Inc. v. Nachazel*, 09–cv–02845–MSK–MJW, 2010 WL 3489915, *2 (D. Colo. Aug. 21, 2010) (citing *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001)). Plaintiff's conduct during discovery does not weigh on the sufficiency of the claims alleged in the Amended Complaint.

account, downloaded information to disk, and maintained company computer after termination); *Protection Tech., Inc. v. Ribler*, 3:17–cv–00144–LRH–WGC, 2017 WL 923912, *1-*2 (D. Nev. March 8, 2017) (finding a likelihood of success on the merits under the DTSA where plaintiff alleged former employee downloaded trade secret information to personal device and email account after termination); *WeRide Corp. v. Kun Huang*, 379 F.Supp.3d 834, 848 (N.D. Cal. 2019) (finding likelihood of success on the merits under DTSA where employee copied company files to personal devices during period he was actively seeking alternative employment).

Plaintiff's First Amended Complaint alleges that 14 former JLT employees used USB devices to remove protected documents from Plaintiff's secured servers, often after receiving offers of employment from Defendant CAC. [#62, ¶¶ 49-66] This conduct violated signed agreements to maintain confidentiality and return company property upon termination of employment. [*Id.* at ¶ 43] Plaintiff identifies the categories of documents taken, client accounts impacted, and dates of access. [*Id.* at ¶¶ 49-66].

Defendants contest the sufficiency of Plaintiff's use of the term "access" to allege misappropriation by acquisition through improper means.[5] [#64 at 12] Whatever the merits of the term "access," Plaintiff sufficiently alleges that documents were not only viewed but also transferred. [#62 at ¶¶ 48 ("the use of USB devices to apparently transfer Marsh information off of Marsh's systems"), 49 ("accessed this information while utilizing USB devices, which allows for the transfer of documents from Marsh's

---

[5] Specifically, Defendants argue that "[b]are allegations that an employee 'accessed' a document or used a USB device in the course of employment, and in the absence of a specific claim that the employee actually improperly downloaded the accessed files to the USB device, cannot state a claim for misappropriation." [#64 at 12]

systems to the USB drives"), 50 ("USB storage device")]  Plaintiff need not repeat the words "storage," "transfer," or "download" each time a USB device is referenced.

Additionally, Plaintiff alleges that the day after Jaclyn Kroupa received a job offer from Defendant CAC, she accessed 149 documents in a 17-minute period while utilizing a USB device.  The Court can discern no reason for accessing so many documents in such a short period of time other than to copy and transfer the documents.  At a minimum, drawing all reasonable inferences, Plaintiff has sufficiently alleged that the documents were transferred, not just accessed.

### iii.  Defendant Use of Trade Secrets and Knowledge of Improper Acquisition

Courts routinely dismiss misappropriation claims where a plaintiff does no more than allege that a competitor has hired the plaintiff's former employee.  *See e.g.*, *Ciena Comm. Inc. v. Nachazel*, 09–cv–02845–MSK–MJW, 2010 WL 3489915, at *4 (D. Colo. Aug. 21, 2010) (finding that misappropriation cannot be imputed on an employer by virtue of employing a person who possesses the trade secrets of another); *Satcom Solutions*, 19-cv-02104-CMA-GPG, 2020 WL 4511773, at *5 (D. Colo. April 20, 2020), *report and recommendation adopted*, 2020 WL 2188922 (D. Colo. May 6, 2020) (same); *RE/MAX, LLC v. Quicken Loans, Inc.*, 295 F.Supp.3d 1163, 1176 (D. Colo. 2018) (same).  Complaints must contain factual allegations specific to the competitor employer.  *See e.g.*, *Ciena Comm.*, 2010 WL 3489915 at *4 (requiring specific facts such as the contacting of formerly exclusive clients or product literature using plaintiff's confidential information); *RE/MAX,* 295 F.Supp.3d at 1175-76 (finding counterclaim lacked specific factual allegations of either disclosure or use of trade secrets by

competitor employer). Conclusory allegations will not suffice. *See Ciena Comm.*, 2010 WL 3489915 at *4; *RE/MAX,* 295 F. Supp. 3d at 1175-76.

Here, the Amended Complaint does more than make conclusory allegations or merely state that Defendant CAC hired Plaintiff's former employees. Plaintiff alleges that CAC was involved in a coordinated effort to solicit Plaintiff's employees and induce them to misappropriate Plaintiff's trade secrets so that CAC could solicit Plaintiff's clients. To support this claim, Plaintiff alleges specific facts showing: (1) CAC's short tenure of operation [#62 at ¶¶ 67-68]; (2) evidence that Plaintiff's employees attended CAC solicitation meetings [*id.* at ¶ 37]; (3) testimony by a CAC employee that confidential client matters were discussed during CAC's solicitation efforts [*id.* at ¶¶ 38, 47]; (4) computer evidence that CAC was in contact with and coordinated the departure of Plaintiff's employees [*id.* at ¶ 41]; (5) evidence that those departing employees accessed Plaintiff's trade secrets after receiving employment offers from CAC [*id.* at ¶¶ 50-66]; (6) the transfer of 34 of Plaintiff's clients to CAC's business [*id.* at ¶ 69]; and (7) overlap between trade secret files misappropriated by employees and client transfer to CAC [*id.* at ¶¶ 50-66]. The Court finds that these facts, taken together, are sufficient to nudge Plaintiff's misappropriation claim against Defendant CAC "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.[6]

Accordingly, the Court respectfully RECOMMENDS that Defendants' Motion [#64] be DENIED as to Plaintiff's claims for misappropriation of trade secrets under DTSA and CUTSA.

---

[6] The Court does not address arguments regarding the doctrine of inevitable disclosure, as it finds that Plaintiff has sufficiently pleaded facts showing use and misappropriation.

### B. State Law Claims

Defendants additionally argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's various state law claims if the federal DTSA claim is dismissed. [#64 at 21-22] A district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. 1367(c)(3); *see also Gaston v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008) (concluding that the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over a plaintiff's remaining state-law negligence claims and stating that "we have repeatedly recognized that this is the preferred practice"). Because the Court does not recommend that Plaintiff's federal claim be dismissed, the Court RECOMMENDS that Defendants' Motion [#64] be DENIED as to Plaintiff's state law claims.

## IV. CONCLUSION

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motion [#64] be **DENIED**.[7]

---

[7] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review

DATED: August 19, 2020  BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge

---

magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).